OWEN CHURCHMAN *v.* WILLIAM LEWIS and others.

Where the defense of usury is made by the drawers of a draft, on the ground that the same was an accommodation draft, in the hands of the acceptors, and was discounted by their agents to the plaintiff, at a greater rate of interest than of seven per cent per annum, the proof of such rate of discount cannot be made, by producing an extract from the books of such agents, reciting facts, from which such usurious discount can be inferred. Such proof must be made by the oral testimony of living witnesses, or by the other recognized modes of establishing facts.

HUNT, J. The plaintiff sought to recover against the defendants, Lewis and Beardsley, as drawers of a draft for $5,000, to the order of Frederick C. Mills, upon Suydam, Sage & Co., of New York, and dated Oswego, May 20th, 1860. The defense was usury; that it was an accommodation draft in the hands of Suydam, Sage & Co., and that it was purchased by the plaintiff of Ward & Co., as agents of Suydam, Sage & Co., at a discount greater than at the rate of seven per cent per annum. The jury found in favor of the defendants, and the general term of the first district affirmed the judgment entered upon their verdict. The case comes before this court upon exceptions to the admission of evidence.

To establish the defense of usury, it was necessary that the defendants should prove, first, that the draft was accommodation paper in the hands of Sage and Suydam. This they attempted to prove by the evidence of the acceptor, and, although extremely faint, there was perhaps evidence enough to justify the jury in finding for the defendants on that point.

Secondly, they were bound to prove that the paper was discounted to the plaintiff by Ward & Co. as the agents of Suydam & Sage, at a rate of interest greater than that allowed by law. To establish this, they called the three members of the firm of Ward & Co. and their clerk, Joseph H. Taylor. Each one of these witnesses testified that he could not identify the paper in question, and did not know that it had ever passed through the hands of their firm, and that they knew nothing about the rate of its discount. They

further stated, as their general course of business, that when paper was sold, a statement was made to one of the clerks, who gave a copy to the party for whom the draft was sold, and made a memorandum in the books.

A statement in the handwriting of Mr. Taylor, the clerk, was read in evidence by the defendants, in opposition to the plaintiff's objection, in the words and figures following, viz.:

"WARD & Co.

| | | | |
|---|---|---|---|
| Suydam, Sage & Co.,.... | $5,000 00 | 122 days, | $101 67 |
| Less interest 12½; com. ¼, | 215 84 | | 101 67 |
| Check herewith,........ | $4,784 16 | | $203 34 |
| ¼ com.,................................... | | | 12 50 |
| | | | $215 84 |

Lewis & Beardsley.
Messrs. Suydam, Sage & Co.
    May 24th, 1850."

This was supposed to have been a copy from the books of Ward & Co. It was not, however, proved to have been such, the witness, Taylor, testifying that he had not compared it with the entry in the books; that it was in his handwriting, but he did not remember from what the memorandum was taken.

The defendants claimed that this entry showed that the draft referred to in the entry was discounted at the rate of twelve per cent per annum, and that the holders received only $4,784.16 for their draft of $5,000, having only 122 days to run; and that the draft in suit was the one referred to in the entry. Although the entry is, in some respects, unintelligible without explanation, and although the plaintiff's name is not mentioned in it, it did tend strongly to make that proof, and the jury must have considered it as satisfactory, as there was no other evidence to establish the usury.

On what principle was it competent? It was the written hearsay statement of Joseph H. Taylor, that the draft in the statement referred to was sold at the discount therein stated. Taylor testifies that he did not himself make the transaction

of the discount of the draft, and that he had no personal knowledge of it; that he did not know who told him to make the entry, and that he had no knowledge whatever of the facts, aside from the memorandum. He supposed the entry to have been made by directions from one of the firm; that such was the general instructions of the firm. The evidence was incompetent. Suppose that either member of the firm, or all of them, had stated to him orally the precise facts set forth in the entry? Would his recital of such statement have been evidence against the plaintiff? Would it be competent, to go still farther, and to hold that Taylor's statement (not his testimony) of the Ward's statement to him would be competent? I am aware of no principle which would justify Mr. Taylor's evidence of such statement if he distinctly remembered it, much less his written recital of it, when at the same time he could not testify that he had ever been so informed by them. The statement gains no additional competency by having been written in the books of Ward & Co. The parties acting in the transaction were all living and competent to testify, and all did testify on the trial. The statement was not within the excepted class of subjects which may be proved by hearsay, such as birth, age, pedigree, &c.; nor was it a part of the *res gestæ*, as the statement is expressly stated to be a subsequent record of the supposed transaction; nor could it come under the head of a public document or an official certificate. It was a pure simple hearsay statement, made without the knowledge of the plaintiff, by parties not acting for him, and in a business in which he had no interest or control, and then read from an uncompared copy of such statement, without explaining the absence of the original, or, more properly, in defiance of the presence of the original in an adjacent street.

A new trial should be granted.

Judgment accordingly.