Church, Ch. J.
The question presented in this case is whether a person prosecuted for an offence before a court-martial organized under the laws of this State, can demand, as a constitutional right, that he be allowed to defend with counsel, or whether this privilege is a matter of favor and discretion. Section 6 of article 1 of the Constitution declares that “ no person shall be held to answer for a capital or otherwise infamous crime (except in cases of impeachment, and in cases of militia when in actual service, and the land and naval forces in time of war, or which this State may keep with the consent of congress in time of peace, and in cases of petit larceny under the regulation of the legislature), unless on presentment or indictment of a grand jury, and in any trial, in cmy court whatever, the party accused *34 shall he allowed to appear and defend in person and with counsel as in civil actions.”
Chapter 80 of the Laws of 1870 provides for enrolling the militia, etc., and, among other things, for organizing courts-martial, and defines their powers and duties; and section 252 ratifies certain rules and regulations, which had been prepared under the act of April 17, 1854, with the changes which had been made, and authorized other changes to be made. The return to the certiorari states that the relator, after the charge and specifications were read to him, demanded that he be permitted to appear and defend with his counsel, naming him, who was then-present; that the said demand was overruled by the court, who held that counsel could only be permitted to act in the capacity authorized by paragraph 189 of the General Eegulations above referred to. After pleading not guilty to the charge and specifications, the relator renewed his request to appear and defend with counsel and the same decision and ruling was made, to which the relator excepted. The Eegulations do not appear in the return and were not handed to the court; but as they were made by authority of the acts of the legislature referred to, we may take judicial notice of them.
Paragraph 189, as set forth in the brief of each counsel, is as follows: “ The court will be particularly guarded in adhering to the custom which obtains of resisting any attempt on the part of counsel to address them. A lawyer, as such, is not recognized by a court-martial, though his presence may be tolerated as a friend of the accused, to assist him by advice in preparing questions for witnesses, in taking notes and shaping his defence.”
The intention by this regulation to ignore the right of a party to appear by counsel is manifest. Any attempt of counsel to address the court is to be resisted. He is not recognized as such by a court-martial, but his presence may be tolerated as a friend, etc. '
It is optional with the court thus to tolerate him, and beyond this, toleration even is prohibited. It is very clear, *35 therefore, that, if the provision of the Constitution above quoted, relative to the right to defend with counsel, is applicable to courts-martial, the paragraph in question violates it, and the decision of the respondents deprived the relator of a constitutional right, and was erroneous.
In the recent case of The People v. Daniell (50 N. Y., 274), this point was waived in this court, and was not considered or decided, but it is the only point presented in this case, and must be disposed of. The language of the provision in question is very broad and comprehensive. No words in the English language could have been selected of more general or sweeping significance. “ In any trial in any court whatever ” is certainly comprehensive enough to embrace these tribunals, unless we are prepared to say that they are not courts of any kind, or unless we can find that the language is restricted or limited by the context or other provisions. The language of a constitution is presumed to be selected with more care and exactness than that of a statute, and when such language has a definite meaning, there is no occasion for construction, and it is not the province of courts to speculate upon what might have been intended. A “ court ” is defined by Webster to be “ any jurisdiction, civil, military or ecclesiastical,” and by Bouvier, “A tribunal established for the administration of justice.” Blackstone says that every court is composed of three constituent parts, the actor or plaintiff, the defendant, and the judicial power to examine the facts, determine the law and apply the remedy. (3 Bl., 24.)
Courts-martial were instituted for the trial of naval and military offences, and existed as early as the reign of James II, and probably had their origin in thé ancient Court of Chivalry. They are regarded as a necessity in every civilized government, in order to properly discipline the military forces, by punishing offences therein. The tribunal is recognized as a court in the elementary works. Bouvier defines it “ a military or naval tribunal, which has jurisdiction of offences against the law of the service, military or naval, in which the offender is engaged.” (See, also, Burrill’s Law *36 Die., title “Court-Martial.”) Greenleaf says: “A court-martial is a court of limited and special jurisdiction.” (3 Greenl. on Et., 470.) It has all the elements of a court. It has judges to hear the evidence, and determine the facts, and apply the law. It has parties, prosecutor and defendant. It has pleadings and a formal trial, renders judgment and issues process to enforce it. In short, it does everything within the sphere of its jurisdiction which any judicial tribunal can do to administer justice.
The act under which this court-martial was organized requires the appointment of three judges, each of whom is required to take an oath to “ faithfully try and determine, according to evidence, the matter now before you between the people of the State of Hew York and the prisoner to be tried, and that you will duly administer justice,” etc.
The president may issue subpenas, and the court compel the attendance of witnesses by attachment, or may take testimony by commission as courts of common-law jurisdiction, and sheriffs, jailors and constables are required to execute any precept issued for that purpose. It may preserve order and punish for contempt as other courts. (§§ 219-226.) After a trial, it may render judgment, and sentence the offender to be cashiered and fined to the amount of $100, for non-payment of which he may be imprisoned, and process to enforce the sentence may be issued to a marshal appointed by the court, or to any sheriff or constable, who are required to execute it. (§§ 214, 215.) To say that such a tribunal is not some kind of a court, and embraced within the expression “ any court whatever,” is a perversion of language. But it is said that we must take a broader view of the question, and we are referred to the context and other circumstances, from which we are asked to infer that this language was not intended to apply to courts-martial. I think the context and other circumstances show directly the contrary, and confirm the definite meaning of the language, and that it was intended to apply to these courts. The language of section 6, that no person shall be held to answer for a capital or otherwise *37 infamous crime, except in cases of impeachment, or in cases of the land and naval forces which this State may keep in time of peace, implies that persons may be held to answer for such crimes in impeachment cases and in the land and naval forces, without indictment; and as courts-martial then existed, and were the only tribunal for the trial of military offences, it must be presumed that this provision had reference to them. The connection of the clause in question with the context is therefore significant in favor of an intention to apply it to these tribunals. Taken together, it may be read that no person shall be held to answer for certain crimes, unless on presentment or indictment, except in courts for the trial of impeachments and courts-martial; but in any trial, in any court whatever, the accused shall be entitled to appear with counsel. This last provision must have been intended to apply to all the courts referred to in the context, at least, and a court-martial is one of them.
Again, the clause in question was inserted as an amendment, in the present Constitution, to a section in the Constitution of 1821, corresponding in other respects with' section six. That provided that the accused should be allowed counsel upon every trial on impeachment or indictment only. The change, we must presume, was intended to accomplish some purpose; and the Supreme Court having held, in Rathburn v. Sawyer (15 Wend., 451), that an accused person was not entitled to counsel before a court-martial under the Constitution of 1821, because such right was limited to trials on impeachment and indictment, it is reasonable to suppose that it was designed to cover that omission, and no other purpose has been suggested. This view is strengthened by reference to the proceedings of the convention of 1846. The section as first reported was a literal transcript from the Constitution of 1821. Afterward, when the subject was up for consideration, I find the following in the official report: “ Mr. Stow moved to amend the ninth section so as to provide that no person shall be tried without counsel. In military trials, especially, should the accused have the benefit of counsel, *38 and in such cases he never had it.” No vote was taken at that time, and the article was referred to a select committee to report complete. Subsequently, and after the report was made, the following proceéding is recorded: “ By unanimous consent, Mr. Stow offered an amendment * * altering the phraseology so that it would read: £ In any trial, in any court whatsoever, the party accused shall be allowed to appear and defend in person and with counsel, as in civil actions; ’ ” and this was agreed to. These words, with a slight verbal revision, were incorporated into the article, and thus became a part of the Constitution. Nothing can be more certain from these proceedings than that the convention intended to give an accused party the right to appear by counsel before courts-martial, and inserted the amendment for that purpose. That precise object was announced by the mover of the amendment, who was himself an able lawyer, and the convention, containing many of the most eminent lawyers in the State, unanimously waived the usual course of parliamentary proceeding to enable the amendment to come in. It is very rare that the intention of the framers of a constitution as to any particular clause is capable of such clear demonstration, and although not conclusive as to the construction, it has a legitimate and important bearing upon it. (Story on Const., §§ 402-407.) As no other-purpose can be supposed for the amendment, and the intent of the convention accords with the language and is confirmed by the context, there seems to be no room left for doubt. The language could not have been more expressive without specifying the tribunal by name. The clause must, therefore, be construed to secure to an accused person the absolute right to appear and defend with counsel. Courts have no right to set up their arbitrary will against the declared will of the Constitution. The words “ as in civil actions ” may be regarded as illustrative of the character of the right that it is absolute and unqualified. They have no force to limit the right, because such right is not confined to actions, but extends to any trial in any court. The trial may be of a criminal action *39 before the ordinary tribunals, or a trial before a court-martial, or any proceeding involving a trial, civil or criminal.
It cannot be said that this construction will produce injurious consequences, or that it involves any absurdity, or is unreasonable in itself. The convention doubtless believed this to be a valuable right, and its protection more in accordance with the spirit of our institutions, and more conducive to the liberty of the citizen than the old custom of toleration by special grace and favor.
Ho reason is perceived why counsel should not be allowed before these courts. They are as useful and necessary there as before any other judicial tribunal. The personal character, property and liberty of the accused are involved, and may be sei'iously jeoparded if he is deprived of the aid of professional skill and learning. The reason advanced in the extract in respondent’s brief, from Tytler on Courts-Martial, an English work, is very unsatisfactory, viz.: “ For lawyers, being in general as utterly ignorant of military law and practice as the members of courts-martial are of civil jurisprudence and the forms of ordinary courts, so nothing could result from collision of such warring and contradictory judgments but inextricable embarrassments, or rash, ill-founded and illegal decisions.” The argument of ignorance is answered by the fact that these courts, in taking evidence, proceed according to the rules of the common law, that professional skill always conducts the prosecution, and that the usefulness if not necessity of counsel is admitted by the toleration which the old custom, pi’eserved in paragraph 189, graciously extends to them; and the argument that counsel might confuse the court would apply, in a degree, to exclude them from all courts. The power of courts-martial was formerly more extensive than now, and was often exercised in the most arbitrary manner. Blackstone denounced this unlimited power by contrasting it with the certainty and precision of the common law, and expressed his sympathy with those who were subject to their jurisdiction, in the following forcible paragraph: “ How much, therefore, it is to be regretted *40 that a set of men whose bravery has so often preserved the liberties of their country, should be reduced to a state of servitude in the midst of a nation of freemen! ” (3 Blackstone, 416.) The power of these courts has been very much restricted and limited since that period; and it is not strange that some of their more rigorous practices should be also modified in a country making still higher pretensions to freedom.
I cannot but think that this “ custom ” is a relic from a military age, in which personal rights were not as much respected nor as well protected as they now are, and that the convention of 1846, and the people, wisely determined to abolish it; but, whether wisely or not, their mandate must be obeyed.
These views do not at all impair the usefulness or efficiency of these courts. This court affirmed their legal existence and regularity in The People v. Daniell (supra), and held that various provisions of the Constitution in relation to courts therein organized, the right of trial by jury, and other clauses, have no application to them or their jurisdiction.
Mr. G-reenleaf, in his work on Evidence, lays it down that under the provision of the Constitution of the United States which declares that “ In all criminal prosecutions the accused shall be informed of the nature and cause of the accusation,” proceedings before a court-martial, being of a criminal character, the party accused is entitled to the benefit of that provision ; and yet, other provisions are coupled with it which are inapplicable to these courts. (3 Greenleaf on Ev., § 471.) Nor does the constitutional clause involved here prevent the adoption of rules of practice and regulations for the conducting of trials before these courts, providing such regulations do not destroy or substantially impair the right to defend with counsel. We do not intend to decide that this clause will make it necessary to change the mode of examining witnesses, or the practice at the trial. The right to appear with counsel is substantial, and must be made effective, but it is not inconsistent with the ordinary procedure of *41 the court. Whatever the accused can say or do in his defence, he may say or do by counsel. This will secure the right without materially affecting the existing practice in other respects. Nor does it detract from the force of this clause that congress may exercise jurisdiction over the subject. It is sufficient that this court was organized under the laws of the State, and is subject to the provisions of the State Constitution.
The proceedings must be reversed.
All concur; Allen, J., not voting.
Judgment accordingly.