JOHN A. McILHARGY, as Assignee, etc., Appellant, *v.* JAMES CHAMBERS et al., Respondents.

Under the act relative to assignments for the benefit of creditors (Chap. 466, Laws of 1877), it is essential to the validity of an assignment that the assignor should part with the instrument by actual delivery either to the assignee or his agent.

Until actual delivery, therefore, title does not pass to the assignee, although he may have previously signed the assent required by the statute.

In an action for the alleged wrongful taking and conversion of certain property, in which plaintiff claimed title under an assignment for the benefit of creditors, in form an indenture, containing the assent of the assignee in the body of the instrument, there was evidence to the effect that the assignee first executed it and thereafter, in his absence, the assignor executed it, leaving it in the hands of the attorney who drew it to await further directions from the assignor, neither party intending that it should be deemed a complete transaction until so determined, and there was no delivery of the assigned property until some time thereafter when a formal delivery of the instrument and the property was made. It was claimed by defendants that the instrument became a complete and valid assignment as soon as it was signed and acknowledged by the parties, and that the continued possession of the assigned property by the assignor thereafter was conclusive evidence of fraudulent intent. *Held*, untenable; and that the question of delivery and fraudulent intent were properly submitted to the jury; that while the burden was upon plaintiff to show that the delivery of the instrument was not, in fact, on the day of its date and execution, the evidence authorized a finding that delivery was not made or intended until, by the

direction of the assignor, formal delivery was made; and this having been found, as the title to the property remained in the assignor until such delivery, which was accompanied by a transfer of possession of the property, there was no fraud as matter of law.

Upon the question as to the value of the property defendants offered in evidence certain accounts purporting to have been accounts made by an auctioneer at the request of the sheriff who levied on and sold the property at the instance of defendants. Said accounts were not sworn to, were not made by the witness who produced them and were proven only to have been rendered by the auctioneer to the sheriff. *Held,* that they were properly excluded, and as they were inadmissible for any purpose, a general objection was sufficient.

*It seems* that evidence of the result of sales made in such a case is competent on the question of damages.

*Scott* v. *Mills* (115 N. Y. 376) distinguished.

*McIlhargy* v. *Chambers* (51 Hun, 332) reversed.

(Argued December 5, 1889; decided December 20, 1889.)

APPEAL from an order of the General Term of the Supreme Court in the first judicial department, made at the October Term, 1888, which set aside a verdict and granted defendants a new trial on exceptions ordered to be heard in the first instance at General Term.

This action was brought by plaintiff, claiming as assignee, for the benefit of creditors of Conrad W. Wennberg to recover damages for the alleged unlawful taking and conversion of the assigned property.

The material facts are stated in the opinion.

*James S. Bennett* for appellant. The delivery of an assignment for the benefit of creditors is not dispensed with by the act of 1877. (46 N. Y. 416; Laws of 1860, §§ 1, 6; Laws of 1877, § 2; *McBlain* v. *Speelman,* 35 Hun, 263, 267; *Rennie* v. *Gaige,* 14 id. 123; *S. B. & N. Y. R. R. Co.* v. *Collins,* 57 N. Y. 641; 1 Abb. N. C. 47; *Brennan* v. *Wilson,* 71 N. Y. 502; *Warner* v. *Jaffray,* 96 id. 253; 30 Hun, 326; *Nicholl* v. *Spowers,* 105 N. Y. 1.) The question of fraudulent intent is cases of assignments of goods and chattels is, by the Revised Statutes, expressly made a question of fact for the jury. (2 R. S. 137, § 4.) Defendants on the trial offered

in evidence two accounts of sales rendered by the sheriff's auctioneer to the sheriff as evidence of value; they were objected to and properly excluded. (*Campbell* v. *Woodworth*, 20 N. Y. 499; *Gill* v. *McNamee*, 42 id. 44; *Flannigan* v. *Maddin*, 81 id. 623; *Dixon* v. *Buck*, 42 Barb. 74; *Beach* v. *R. & D. B. Co.*, 37 N. Y. 470.) Testimony was offered by defendants of a statement made by Wennberg in April, 1886, three months before the assignment. As against the plaintiff the testimony was hearsay, and not a part of the *res gestæ*, and under the decisions of this state was clearly incompetent. (*Bullis* v. *Montgomery*, 50 N. Y. 352, 358; *Vidvard* v. *Powers*, 34 Hun, 221; *Flagler* v. *Wheeler*, 40 id. 125, 128; *Flagler* v. *Schoeffel*, Id. 178; *Traux* v. *Slater*, 86 N. Y. 630; *Tilsson* v. *Terwilliger*, 56 id. 277.)

*Alex. Blumenstiel* for respondents. The assignment was a completed instrument when executed, June twenty-fourth, and the plaintiff was estopped in law from showing the contrary. The failure to take possession of the property under the evidence was conclusive of a fraudulent intent. (*Scott* v. *Mills*, 26 N. Y. S. R. 124.) Delivery is only evidence of acceptance, and where acceptance is conclusively shown by the instrument itself the question of delivery is out of the case. (*Crosby* v. *Hillyer*, 24 Wend. 280; *Jackson* v. *Phipps*, 12 Johns. 418, 421; *Jackson* v. *McCrea*, 1 Johns. Cas. 114; *Rentard* v. *Bodle*, 20 Johns. 184; Laws 1860, chap. 348, § 1.) When, however, the acceptance by the assignee of the trust is at the end of the instrument it is decisive against him. (*Mead* v. *Phillips*, 1 Sandf. Ch. 85; *Scott* v. *Mills*, 26 N. Y. S. R. 129.) The provisions of the law of 1877 did away with the question of delivery in assignment cases; the acceptance became conclusive of the delivery. (*Rennie* v. *Bean*, 24 Hun, 124, 125; *Fairchild* v. *Gwynee*, 16 Abb. 23.) The assignment being once accepted, the title to the property passed, the instrument being in other respects valid. (*Warner* v. *Jaffray*, 96 N. Y. 253; *Cocks* v. *Barber*, 49 id. 110; *Wallace* v. *Russell*, 97 id. 13.)

The assignment, therefore, being a complete instrument as between the parties, and nothing else necessary to pass title, it is void as to creditors. (1 R. S. 136, § 5 ; *Mead* v. *Phillips,* 1 Sandf. Ch. 285 ; *Sturtevant* v. *Ballard,* 9 Am. Dec. 281, 282 ; 9 Johns. 331 ; *Tilson* v. *Terwilliger,* 56 N. Y. 273 ; *Connah* v. *Sedgwick,* 1 Barb. 210 ; *Bale* v. *Loomis,* 29 N. Y. 412 ; *Van Buskirk* v. *Warren,* 2 Keyes, 119 ; *Van Nest* v. *Yoe,* 1 Sandf. Ch. 4 ; *Fiedler* v. *Day,* Id. 594 ; *Currie* v. *Hart,* 2 id. 353 ; *W. N. Bk.* v. *Halsey,* 57 Barb. 249 ; *Adam* v. *Davidson,* 10 N. Y. 309 ; *Forbes* v. *Walker,* 25 id. 430.) The assignment is likewise void because its primary object was to defeat and delay Chambers. (*Eyre* v. *Beebe,* 28 How. 333 ; *Rathbon* v. *Platner,* 18 Barb. 272 ; *Nicholson* v. *Leont,* 6 N. Y. 510, 515 ; Burrill on Assign. 486, 490, 494, 499 ; *Baldwin* v. *Peet,* 71 Am. Dec. 812, 816.) The assignment is void because a power to revoke was secretly reserved to the assignor with the consent of the assignee, who was a party to such arrangement. (*Kercheis* v. *Schloss,* 49 How. 284–288 ; *Grover* v. *Wakeman,* 11 Wend. 403 ; *Barnum* v. *Hempstead,* 7 Paige, 568 ; *Board* v. *Halliday,* 10 id. 223 ; *Sheldon* v. *Dodge,* 4 Denio, 217 ; *Dunham* v. *Watemer,* 17 N. Y. 9 ; *Collemb* v. *Caldwell,* 16 id. 484 ; *Reichenback* v. *Winkhans,* 12 Daly, 525.) The acceptance acknowledged by the parties on the twenty-fourth of June became operative as soon as both parties signed the instrument, irrespective of whether the parties intended it should become operative ; the delivery of the paper was of no importance. (*Wallace* v. *Russell,* 97 N. Y. 13.) If a solvent debtor makes a general assignment, it is conclusive against him upon the question of his intent to hinder and delay his creditors, and, indeed, his belief that he was solvent (though, in fact, insolvent) is equally fatal to the assignment. (*Van Nest* v. *Yoe,* 1 Sandf. Ch. 4 ; *Kellogg* v. *Slawson,* 15 Barb. 56 ; *Livermore* v. *Northrup,* 44 N. Y. 107 ; *Ogden* v. *Peters,* 21 id. 23 ; *Knight* v. *Pacher,* 72 Am. Dec. 388.) While not being conclusive as to value, certainly the amount realized on sheriff's sale was some evi-

dence of value to be considered by the jury. (*Heinmuller* v. *Abbott*, 2 J. & S. 228; *Gill* v. *McNamee*, 42 N. Y. 44, 46.)

Danforth, J. The controversy is between the voluntary assignee of an insolvent debtor for the benefit of his creditors on one side, and his judgment and execution creditors on the other. The jury found in favor of the assignee, but judgment on the verdict was suspended until exceptions taken at the trial could be passed upon by the General Term. That court sustained the exceptions and ordered a new trial. From that order this appeal is taken by the assignee.

The principal question considered in both courts, was whether the assignment under which the plaintiff claimed, operated as a valid instrument at the time of its apparent date and time of signing by the assignee, or whether its actual delivery by the assignor determined the time when the rights and duties of the assignee attached.

The trial judge held, in substance, that the title did not pass until delivery of the instrument, as under the rule of the common law, while the General Term were of opinion that the statute relating to assignments (Laws of 1877, chap. 466), created a test and made the consent of the assignee, subscribed to the instrument, conclusive evidence as to the time when it took effect.

The facts on which the answer to the question thus at issue depends, are undisputed. It appears that on the twenty-fourth of June, Wennberg, the debtor, directed his attorney to prepare an assignment of all his property to McIlhargy, in trust for the assignor's creditors. This was done. The instrument purported to be an indenture bipartite, and at the end, contained a recital that the party of the second part (McIlhargy) did "accept the trust created and reposed in him" by the instrument, and also a covenant on his part to and with the assignor, "that he will faithfully and without delay execute the trust according to the best of his skill, knowledge and ability." In that condition, and before its execution by the assignor, the instrument was signed and acknowledged by

McIlhargy, but not delivered to or taken by him. On the contrary, it remained in the hands of the draftsman unde-livered, and incomplete. Some hours afterwards, but on the same day, Wennberg, in the absence of McIlhargy, signed and acknowledged the instrument and left it with his attorney. Unless the assent of the assignee, expressed as above stated, gave effect to the assignment, it was still inchoate, and nothing further was done in relation to it on that day. The evidence, indeed, warrants the conclusion that it was left with the attorney to await directions by the assignor, and that it was not intended by either party that the assignor should lose control over it, or that it should be deemed a completed transaction until he so determined. On the third of July, Wennberg made a formal and unconditional delivery of the assignment to the assignee's agent, who at once caused it to be recorded, and possession was immediately taken of the assigned property by the assignee. No execution had then been issued, but afterwards, and on the eighth of July, the property, while in the hands of the assignee, was seized by the sheriff under process in favor of the judgment creditors. They indemnified him for so doing, and he being sued for that act, they were substituted in his place as defendants.

The question is as to priority. The defendants claim that by virtue of the statute relating to assignments (*supra*), the subscription of the instrument by the assignee, although with-out any actual delivery to him, gave effect to the assignment the moment it was signed by the assignor, and that the con-tinued possession of the property by the assignor until the third of July, was conclusive evidence of a fraudulent intent in making the assignment.

The trial court ruled otherwise, but gave all the circum-stances attending the transaction to the jury, and asked them to determine, as a matter of fact, whether the assignment was made, executed and accepted within the intention of the parties on the day of its date, and said if such were the case,

then continued possession by the assignor of the property embraced in it would be deemed fraudulent; and so if the assignment was, in fact, fully executed on that day, but with the understanding that the assignor might revoke it, or if such a power was reserved at the time of its execution, or if the assignment so made was, by agreement of the parties, to be withheld from record, or left concealed at the pleasure of the assignor. At the request of the defendant the trial judge said, " that a formal delivery of the assignment was not necessary, but the jury might infer from circumstances that the assignment in question was, in fact, delivered on the day of its date." He refused, however, to charge, as matter of law, that the execution of the assignment, on the twenty-fourth of June, and its acknowledgment, " made the instrument, at that time, a complete and valid assignment under the laws of this state relating to general assignments." The verdict of the jury negatived the implication of fraud sought to be raised by the defendants, and established that there was no delivery or acceptance of the assignment until the third of July, when it actually came under the control of the assignee, and was placed on record. The title of the assignee, therefore, began at that time, and the jury also found that the assignment was created by a fair and honest transaction and without any fraudulent intent.

There was no error in submitting the questions to the jury. The construction of the instrument, if it became necessary, was for the court, but whether the instrument was delivered so as to become effective between the parties depended on extrinsic evidence, and could not be determined solely by an inspection of it. Upon its face the assignment, when produced at the trial, appeared to be a complete and perfect instrument, executed by both parties. But the evidence showed that when signed by the assignee it had not been signed by the assignor. It is clear there could have been no trust created until he did sign it, and consequently there could be no acceptance of a trust until that event.

When the assignor did sign he still retained control of the

instrument, and while he did so there was no trust created in the assignee. He came under no obligation or duty. The assignee could not be charged because he never had the assignment, and the assignor might at any moment have destroyed it without infringing the right of any one or violating any moral or legal duty. He could have executed another assignment to another person, and was under no control but his own will whether he should do so, or destroy or deliver the one in question. Delivery is as essential since the statute of assignments as before its passage. It is the final act without which all other formalities are ineffectual, and the real date of the instrument is the time of its delivery. Until that event the assignment could not become operative, whatever language on the part of the proposed assignee may have been written in it. The mere taking of an instrument into his hands by the grantee, even if he retained it, would amount to nothing if the circumstances showed that he did not receive or hold it as an effective conveyance. (*Jackson* v. *Richards*, 6 Cow. 617.) In that case, as also in *Crosby* v. *Hillyer* (24 Wend. 284), and in *Brackett* v. *Barney* (28 N. Y. 333), it is held that the question of delivery involving acceptance is always one of intention, depending on the circumstances of the transaction. In the cases referred to it is held that the deed may even be delivered to the grantee to await his determination whether he will accept it or not. So it may be assented to by him to await the determination of the grantor whether he will deliver it or not. So an assignment may be agreed to by the assignee to await complete execution and delivery by the assignor. In none of these cases is effect given to the instrument unless an absolute delivery was intended. In *Warner* v. *Jaffray* (96 N. Y. 252), decided after the passage of the act of 1877 (*infra*), it is declared that an assignment takes effect from the time of its delivery; and referring to that act it is said that the assignment must be in writing and acknowledged, and the assignee must assent thereto in writing; and when it has thus been executed and delivered it takes effect and the title to the property passes to the assignee.

In *Scott* v. *Mills* (115 N. Y. 376), cited by the respondent, there was an actual delivery of the assignment. The decision turned upon the form of the assent of the assignee, and related to a completed assignment, not only by execution but by actual delivery. The question was as to the sufficiency in form of that assent, whether it was manifested in the manner provided by law. Counsel for the defendant did, indeed, make a point similar to the one now before us. He argued that the design of the statute (*supra*) was to dispense with a formal delivery of the instrument after its proper execution and acknowledgment; and in answer to that contention the learned judge said he did not agree that the design of the statute · was to dispense with a delivery of the instrument after its proper execution and acknowledgment, but that its apparent object was to require written evidence of all the essential acts to a complete transfer of the property to the assignee, and all that was held to have been accomplished. It was also held that the record of the assignment was presumptive evidence of its delivery.

By the act in relation to assignments (Laws of 1877, chap. 466), it is made essential to the validity of such an instrument that it be in writing; it must be acknowledged; it must be recorded. It requires that the assent of the assignee shall be subscribed and acknowledged by him. It may be embraced in, or at the end of, or indorsed upon the instrument, and must be so before the same is recorded; and if separated from the instrument, must be duly acknowledged. These things are to be done, but they do not dispense with delivery, nor is the assent of the assignee made by statute the only evidence of delivery. It is evidence of the acceptance of the trust. It would no doubt be, under some circumstances, evidence of delivery if the assignment were found in his hands or in hands other than those of the assignor. But where, as in this case, the instrument executed by the assignor neither came to the assignee, nor went from the assignor's control until after its date, there can be no such presumption. We have no doubt that under the provisions of that act, as before, it is essential

to the operation of such an instrument that the assignor should part with it by actual delivery either to the assignee or to his agent. Delivery is a constituent part of the act of execution. It is its consummation, and the estate of the assignor cannot be affected until the act has been performed. The assent of the assignee might be anticipated, as it was in this case, by his signature, although the assignor had not then signed it, but a delivery to some person, or into some place beyond the assignor's control, was indispensable. It no doubt rested upon the plaintiff to show that the delivery was not, in fact, on the day of its date. The trial judge so held and so charged the jury; and they found, according to the claim of the assignee, that its delivery was, in fact, upon the third day of July, and not upon the twenty-fourth day of June. Under the evidence the jury were justified in finding that the execution of the instrument in this case was not absolute; that it was not intended to be; and that it had no effect until by the direction of the grantor it was placed in the hands of the agent of the assignee. Nor does harm or injustice result. Between the twenty-fourth of June and the third of July the property of the assignor was subject to seizure by creditors to the same extent precisely as before, and the assignment, although signed by the assignee, had no efficacy to withdraw the property of the assignor from their reach. The assignee could not claim it, for there was no grant; the assignor had not signed it, and, for the same reason, the assignor could not set it up as an answer to his creditors.

There is a question relating to evidence. As bearing upon the value of the goods taken, the defendants offered in evidence certain accounts purporting to be accounts of sales made by an auctioneer at the request of the sheriff. They were not sworn to, were not made by the witness who produced them, and were proven only to have been rendered by the auctioneer to the sheriff. They, clearly, were not admissible, and were properly excluded as incompetent. (*Churchman* v. *Lewis*, 34 N. Y. 444.) Evidence of the result of sales made in such cases is competent, and the amount, when properly proven,

has a bearing upon the damages sustained by the owner of goods converted. (*Campbell* v. *Woodworth*, 20 N. Y. 499.) But a mere statement or declaration, oral or in writing, by a third person, although it be a statement of his dealing with the goods, is hearsay only. No amount of evidence could make it admissible, and the general objection was enough to justify its exclusion. (*Tooley* v. *Bacon*, 70 N. Y. 34.)

Some other exceptions were taken by the defendant, but they do not appear important, or require mention.

We think the case was properly submitted to the jury, and, therefore, that the judgment of the General Term should be reversed and the plaintiff have judgment upon the verdict, with costs in all courts. And it is so ordered.

All concur.

Judgment accordingly.