point out errors which appear as to rulings upon evidence, preferring, as we do, to discuss the merits of the award itself, which, when compared with the extent of the property involved, would seem, as a matter of first impression, to be excessive, and, when examined in the light of the record, not sustainable, unless now, for the first time in cases of this kind, the rule is to be changed by allowing punitive, instead of compensatory, damages.

Upon the merits, and for errors in rulings, therefore, we think this judgment should be reversed, and a new trial ordered before another referee, with costs to appellants to abide the event. All concur.

(5 App. Div. 392.)

SOUTH DANVERS NAT. BANK v. STEVENS et al.

(Supreme Court, Appellate Division, First Department.     May 22, 1896.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—DELIVERY TO ASSIGNEE.
A firm agreed with some of its creditors to place its affairs in the hands of a committee for the realization of assets, and a division of the proceeds among the creditors in proportion to their claims. The agreement provided that each creditor signing thereby appointed the committee attorneys in fact to give acquittances for their claims. After the committee had taken possession of the assets, a nonassenting creditor sued the firm, which thereupon executed an assignment for the benefit of creditors, and left it with the attorney to be used to compel such nonassenting creditor to enter into the agreement with the rest. The assignment was not recorded until three weeks after its execution, and after the nonassenting creditor had recovered judgment. One of the assignors testified that the assignment was not intended to be recorded until further directions from him, and that he never gave any further directions. The attorney testified that it was agreed that he should hold the assignment, and have it recorded at the proper time, unless a settlement could be made with the nonassenting creditor. The assignee testified that the assignment "was in the hands of our attorney." Held, that the assignment was void, since it either was not delivered at all, or, if delivered on the day of its execution, was not followed by change of possession of the assigned property.

2. SAME—USE TO COERCE CREDITOR.
An assignment for benefit of creditors, executed for the purpose of compelling creditors to enter into a composition, is fraudulent in fact.

Appeal from special term, New York county.

Action by the South Danvers National Bank against Daniel L. Stevens and others to set aside, as fraudulent, a general assignment for benefit of creditors. A judgment was rendered in favor of plaintiff, and defendants appeal. Affirmed.

The firm of Stevens, Corwin & Co. was a limited partnership, composed of the defendants Stevens, Corwin, and Coffey, as general partners, and one Davis, as special partner. Stevens, Corwin & Co. ceased doing business April, 1891, and in August of that year it was discovered that the firm could not pay its debts in full, and thereupon an agreement in writing was made by the firm with its creditors. The purpose of this agreement was to place the affairs of the firm in the hands of a committee of its creditors, for a realization of its assets, and a division of the proceeds among the creditors in due proportion to their respective claims. It contained a provision that each creditor signing constituted and appointed the committee attorneys in fact, irrevocable, for the creditors, "to collect, compound, receive, and give acquittance for, said claims and demands." This agreement was made

September 25, 1891, and all the firm's creditors, except the plaintiff, became parties to it. In March, 1892, the plaintiff began an action against Stevens, Corwin, and Coffey, to recover on a note, which action was commenced after the committee of creditors had begun to collect and distribute the firm's assets under the agreement, and after ineffectual efforts had been made to induce the plaintiff to be a party thereto. Anticipating that plaintiff would get a judgment, and thereunder obtain a preference over the other creditors, the committee, through one of its members, who was subsequently named as assignee, suggested that a general assignment for the benefit of creditors should be prepared, to be used in the event that the plaintiff would not come in under the agreement, and would insist upon its judgment, and its right to proceed thereunder to enforce its claim. The deed of assignment was executed on the 16th day of June, 1892, and was not recorded until the 8th day of July, 1892, three weeks afterwards. Plaintiff's action, in which an answer had been interposed, appeared on the day calendar for trial June 17, 1892, and both parties answered "Ready"; but, before being actually reached or tried, the attorneys for the plaintiff and the defendants' firm, respectively, had a conversation, in which the defendants' attorney gave the information that the assignment had been made, and that it was intended to use it unless a settlement with the bank was effected. Some such settlement was thereupon attempted, but the attorneys do not agree as to what the proposed terms were. That is now immaterial, however; for while, as the result, the plaintiff received costs, the other conditions were not fulfilled, and, after waiting until July 7th, plaintiff docketed its judgment, and on the next day the general assignment was filed. Upon the question of delivery, one of the assignors testified: "My intent was to place in the hands of the committee a weapon to bring the South Danvers National Bank into the composition with the rest of the creditors." "My recollection is that the paper was not to be recorded until I was further spoken to on the subject. I was never spoken to further on the subject of recording that paper. I first learned that it had been recorded when I saw it in the public press." The assignment "was brought to me by Mr. Sargent, the assignee, and I think I first saw it on the day it was executed, the 16th June. The assignment had been talked of before that, but I did not know whether or not it had been prepared. When Mr. Sargent brought me the paper, he said that the bank was going to take judgment, I think on the next day, and that it was necessary to have this paper in order to bring the bank into line with the rest of the creditors. * * * Mr. Sargent said, in substance, that in all probability the assignment would not be required to be filed, and that the bank would, when the paper was produced to them,—the bank would fall into line with the rest of the creditors, and sign that agreement." The attorney who drew the instrument testified: "At the time of the execution of this assignment the instructions to me were, from Stevens, Corwin & Co., to have a further conference with Mr. Fletcher, representing the bank, and to see if an arrangement could not be made. Meanwhile I was to hold the assignment, and have it recorded at the proper time, unless such a settlement could be made." And the assignee, when examined upon the question as to what was done with the assignment when executed, stated, "It was in the hands of our attorney;" and the testimony shows that it so remained in the possession of the attorney for the assignors, and there is a substantial agreement that the assignment was not to be recorded if a settlement was made with the bank.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and O'BRIEN, JJ.

Charles J. Hardy, for appellants.

Austin B. Fletcher, for respondent.

O'BRIEN, J. There is much force in the claim that the general assignment was void because it was not accompanied by an immediate delivery, and followed by an actual and continued change of

possession, of the property assigned (2 Rev. St. p. 136, § 5; 3 Rev. St. [Banks' 7th Ed.] p. 2328); it appearing that, between the date when the assignment was executed and the date of its record, the property of the debtors was in the possession of the committee of creditors under the agreement, or, as stated by the terms of the agreement, was being "collected, and converted into cash, under the direction of said committee," with a view to its distribution equally among all the creditors who were parties to that agreement, which included all the creditors except the plaintiff. It may be answered, however, that as it was not a completed assignment, because not delivered, and was to be held from the day of its date, when signed by the parties, until further directions by the assignors, under the case of McIlhargy v. Chambers, 117 N. Y. 532, 23 N. E. 561, it was not fraudulent as to creditors. In that case it appeared that the assignee signed and acknowledged the assignment, and subsequently, on the same day, the assignor executed it and left it with his attorney. More than a week afterwards the assignor made a formal and unconditional delivery of the assignment to the assignee's agent, who caused it to be recorded, and the assignee took possession of the assigned property. It was therein held that the assignment did not take effect until delivery, and that the jury were justified in finding that there was no delivery until the formal delivery to the assignee's agent. In that case, however, there never had been any delivery to the assignee until the very day when it was recorded and possession of the property taken; and immediately upon the assignment becoming effective the assignee took possession, and there was thereafter a continued change of possession. Here, however, the assignment was executed by both parties on the same day, and was delivered to the attorney, who was to hold it, according to the testimony of one of the assignors, until they gave directions in reference thereto, or, as stated by the assignee, until it could be ascertained finally whether they could obtain the consent of the plaintiff to the agreement with the other creditors. According to all the testimony, it was to be used for the purpose of bringing in the plaintiff under the agreement, and if this were effected it was not to be recorded.

We are thus presented with this dilemma: Either that there was a delivery of this assignment upon the day it bears date, which was not followed by an actual and continued change of possession of the property assigned, or there never was any delivery at any time, because the evidence shows that the attorney in whose possession it was left, without further consultation with any of the assignors, recorded the assignment after having failed in using it as an effective instrument with which to compel the plaintiff to come in under the agreement. Taking the intent with which the assignment was made, the use to which it was to be put, and the conditions which were thrown around its becoming effective, we fail to find sufficient to justify the legal conclusion that it was intended by the assignors or by the assignee as a legal instrument affecting the title of property. Concededly, its use was to coerce the plaintiff into a compromise, and that this was the real purpose is frankly avowed by the

attorney who drew it, who states that at the time of the execution of the assignment his directions from the assignors were to have a further conference with the bank's representatives, and see if an arrangement could not be made ("Meanwhile, I was to hold the assignment, and have it recorded at the proper time, unless such an arrangement could be made"); that, having possession of the assignment, he went to the attorney of the plaintiff, showed him the assignment, and stated that it would not be used if judgment was not entered, and that it would be if the bank insisted upon proceeding with the judgment. And it was only the day after such judgment was entered that the attorney, without further conference with the assignors, placed it on record. The case already cited (McIlhargy v. Chambers) restates the well-settled rule that it is essential to the validity of the assignment that the assignor should part with the instrument by actual delivery either to the assignee or his agent. In Kingston v. Koch, 57 Hun, 12, 10 N. Y. Supp. 363, the facts were in many essential features like the case at bar. There the debtor had prepared and signed, and placed in the hands of his attorney, after a suit had been brought against him, a general assignment. This was placed in the safe of the attorney, and there remained until the judgment in the action was procured, when the attorney who had been defending the case went hurriedly to his office, and, without further conference with his assignor, took the assignment from his safe and gave it to the plaintiff, the assignee therein named. In the course of the opinion it is said:

"This assignment never became effective as against creditors. When the assignor executed the same he had no intention of having it delivered as an effective instrument, but he intended to have it used as a shield in case of necessity."

That case is authority further for the proposition that "until delivery the assignment is a nullity, and unless the assignor has, by his acts, authorized delivery, the instrument is inoperative," and that, "in determining whether an assignment was made for the purpose of defrauding creditors, it is not the intent of the assignee, but rather that of the assignor, before the delivery of the assignment, which is to govern." Taking the intent of the assignors here, and the evidence relating to the assignment, we are, as stated, necessarily brought to one of two views: Either that there was a delivery on the day that the instrument bears date, which was not followed by a change of possession of the property, and which reserved to the assignors the power of revoking the instrument, and the right to withhold it from record, at their pleasure,—all of which would render the assignment void,—or there was no delivery at that time, and, so far as the evidence shows, none thereafter; the attorney acting upon his own judgment of the exigencies of the situation, and recording the instrument after having failed to coerce the plaintiff. This, as we have seen, under the authorities, cannot be regarded as a delivery of the instrument, or an act which would render the assignment operative. In addition, we think, with the learned trial judge, that the assignment was fraudulent in fact. There is no doubt as to a

debtor's right to go to creditors with a view of effecting an amicable settlement, and, in the course thereof, informing such creditors that a failure to compromise will necessitate an assignment. But this is quite another thing from doing what was done here, namely, formally executing an assignment, and then using it as a weapon for the purpose of coercing a creditor into an agreement by which he gives to the committee having charge of carrying out a composition the right to discharge the debt, and thus foregoing the right which the creditor has, not only to receive a distributive share of his debtor's property, but also to proceed for the balance against such debtor.

Our conclusion, therefore, is that the judgment below was right and should be affirmed, with costs. All concur.