ARMSTRONG v. BORDEN'S CONDENSED MILK CO. et al.

(Supreme Court, Appellate Division, Second Department. November 15, 1901.)

**1. MECHANIC'S LIEN—ASSIGNMENT FOR BENEFIT OF CREDITORS—PRIORITIES.**

Lien Law (Laws 1897, c. 418) § 4, provides that if labor is performed for or materials furnished to a contractor, the lien shall not be for a sum greater than that earned and unpaid "at the time of filing the notice of lien" and any sum subsequently earned thereon, and in no case shall the owner be liable to pay, by reason of all liens created pursuant to such article, a sum greater than the value of the labor and materials remaining unpaid at the time of "filing notice of such liens." Section 11 declares that at any time after filing the notice of lien the lienor may serve a copy of such notice on the owner, but until service of the notice has been made an owner, without knowledge of the lien, shall be protected in any payment made in good faith to any contractor or other person claiming a lien. Laws 1877, c. 466, § 2 (General Assignment Act), provides that a general assignment for the benefit of creditors, when executed and delivered as required, takes effect, and the title to the property passes to the assignee. *Held*, that the execution and delivery of a general assignment of a building contractor will prevent a subcontractor from obtaining a right to a mechanic's lien under a notice filed subsequently thereto.

**2. SAME—STATUTES—APPLICATION.**

Laws 1897, c. 418, § 15, providing that no assignment of a contract for the furnishing of materials for the improvement of real property or money, or any part thereof, due or to become due therefor, shall be valid until the contract, or a statement containing the substance thereof, and such assignment, or a copy of each, etc., be filed in the office of the county clerk of the county wherein the real property improved is situated, does not apply to a general assignment for the benefit of creditors, so that the execution and delivery by a contractor of such an assignment in accordance with Laws 1877, c. 466 (General Assignment Act), is sufficient to give the assignee a preference over subsequent liens claimed by subcontractors on the money due from the owner.

Appeal from special term, Kings county.

Action by James Armstrong against the Borden's Condensed Milk Company and others to foreclose a mechanic's lien. From a judgment in favor of plaintiff, the Otto E. Reimer Company appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

John T. Sackett, for appellant.

Henry De Forest Baldwin (William R. Barbour, on the brief), for respondents.

WOODWARD, J. There is no dispute as to the facts in this case. In August, 1899, the defendant Borden's Condensed Milk Company, being the owner of the land described in the complaint, contracted in writing with the defendant Robinson, under his business name of Robinson & Wallace, for the construction of a building thereon. The defendant (appellant) Otto E. Reimer Company was a subcontractor under this contract, and furnished to Robinson materials for the building of the value of $2,799.54, no part of which has been paid. The plaintiff, Armstrong, was also a subcontractor under Robinson, and furnished materials and labor of the value of $3,-

159.76. On the 7th day of March, 1900, at 9:52 a. m., the plaintiff filed his notice of lien in the office of the clerk of the county of Kings. On the same day the defendant Robinson made, executed, and delivered· to 'the defendant Talbot a general assignment of all his property for the benefit of his creditors, which assignment was duly accepted by the assignee. This assignment was recorded in New York county on March 8, 1900, at 9:10 a. m., and a notice thereof was filed in Kings county on March 9, 1900. On March 8, 1900, at 9:03 a. m., the appellant, Otto E. Reimer Company, filed its notice of lien in the office of the clerk of Kings county. There was due to Robinson from Borden's Condensed Milk Company on March 7, 1900, upon the contract of construction, the sum of $4,767.14. The case was tried on March 22, 1901, at special term, resulting in a judgment for the plaintiff, with costs; the balance of the fund to go to the assignee, who was held to take precedence over the lien filed by the defendant Otto E. Reimer Company. All of the parties, with the exception of the plaintiff and the defendants Borden's Condensed Milk Company, Otto E. Reimer Company, and Talbot, as assignee, defaulted in pleading, and none of the defaulting defendants appeared at the trial. The defendant Otto E. Reimer Company excepted to the decision, claiming that the court erred in holding the rights of the assignee to be superior to those of the Reimer Company, and the question is thus presented whether a general assignment of a building contractor prevents a subcontractor from obtaining a right to a mechanic's lien under a notice filed subsequent to the execution and delivery of the general assignment.

We have reached the conclusion that the position of the appellant cannot be sustained, and that the court did not err in the disposition of this question. The statute (section 4, Lien Law; chapter 418, Laws 1897) provides that:

"If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon. In no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notice of such liens, except as hereinafter provided."

The exception mentioned refers to advance payments, collusive mortgages, etc., entered into for the purpose of defrauding lienors, and has no bearing upon the present case. Section 11 of the lien law provides that at any time after filing the notice· of lien the lienor may serve a copy of such notice upon the owner, but "until service of the notice has been made, as above provided, an owner, without knowledge of the lien, shall be protected in any payment made in good faith to any contractor or other person claiming a lien," so that, if Borden's Condensed Milk Company, on the morning of March 7, 1900, had paid Robinson the amount of his claim, and the latter had assigned the money, with his other property, to Talbot, for the benefit of his creditors, there could have been no question of his right to do so; for it is not pretended that any lien was

filed by the Reimer Company until the following day. If Robinson could have taken the money upon his contract on the 7th day of March, and transferred the same to his assignee for the benefit of his creditors, is there any reason in law why he might not have assigned his chose in action? No reason suggests itself why a man might not include a fund which might, under some circumstances, be subject to a lien, prior to the attaching of such lien, in a general assignment of his assets for a purpose recognized and sanctioned by the laws of this state. If this might be done lawfully, there is no doubt that the assignment took effect from the time of its delivery, and when the Reimer Company filed its notice of lien on the morning of the 8th day of March, 1900, there was no debt owing to Robinson from Borden's Condensed Milk Company, and the lien could not, therefore, attach. "Section 2 of chapter 466 of the Laws of 1877 (the General Assignment Act) provides how a general assignment for the benefit of creditors shall be executed. It must be in writing, and acknowledged, and the assignee must assent thereto in writing; and when it has thus been executed and delivered it takes effect, and the title to the property passes to the assignee. All else required by the statute may be done afterward, and, if any of the other requirements are omitted, the assignment is not thereby rendered void. * * * If the assignment were to be held inoperative until recorded, then it would be in the power of the assignee, by simply retaining it in his possession, to defeat its operation." Warner v. Jaffray, 96 N. Y. 248, 252, 253, 48 Am. Rep. 616; McIlhargy v. Chambers, 117 N. Y. 532, 539, 23 N. E. 561; Franey v. Smith, 125 N. Y. 44, 49, 25 N. E. 1079; Insurance Co. v. Van Wagonen, 132 N. Y. 398, 402, 30 N. E. 971, and authorities cited. At the time of the assignment to Talbot the Otto E. Reimer Company was a mere general creditor of Robinson, as were other material men, and the assignee took title to all of the property for the benefit of the creditors of Robinson. The rights of other creditors had intervened before they took any steps to establish their lien under the provisions of the statute. When they did act, Borden's Condensed Milk Company did not owe Robinson anything, and the right of the Reimer Company to a lien depended upon the indebtedness of Borden's Condensed Milk Company to the principal contractor. The mechanic's lien law operates as an attachment of the funds due to the contractor in the hands of the owner of the premises; but when the contractor has lawfully parted with the ownership of such fund, and its title has vested in an assignee for the benefit of all of the creditors of the contractor, the reason for the lien is at an end. The fund has been appropriated to the payment of the debts of the contractor, including the Reimer Company; and, as reason is the soul of law, when the reason of any particular law ceases, so does the law itself. Broom, Leg. Max. (4th Ed.) p. 133. The provision of the statute that the lien may be filed within 90 days of the last labor or materials furnished is merely a limitation of the period within which the privilege shall be in force, and does not contemplate that the lienor shall have a lien under all circumstances within that time. It fixes a time within

which he must act, if he elect to act at all; and, if he neglect to exercise the special privilege conferred by the statute until the rights of third parties have intervened, he must be content with occupying his position of a general creditor, and participate with others in the distribution of the property in the hands of the assignee. The assignee does not occupy the position of the contractor. He is the trustee for the creditors of the contractor, and liable to them only to the extent of the property which comes into his possession. He does not owe the subcontractor anything, except the duty to distribute equally the funds or other property which came to him from his assignor, and the lien cannot attach to the premises of the owner through the assignee for the benefit of the Reimer Company. The Reimer Company is claiming upon this appeal a right which does not exist at common law. It must, therefore, show that it has complied with the statute, and that it has filed its notice of lien at a time when the lien could attach. It is not enough to show that the notice was filed within three months. It must show that it was filed while the funds due from the owner of the premises belonged to the contractor; for there can be no doubt, under the authorities cited, that Robinson was the owner of a chose in action against Borden's Condensed Milk Company on March 7, 1900, and that he conveyed a good title to such property to his assignee, who can collect the same from the Borden Company; and it cannot be the policy of the law, in the absence of collusion or fraud (and such is not here suggested), to compel the owner of real estate to pay twice for the same work and materials. Any other disposition than that made by the learned court at special term would permit the working of a wrong upon the vested rights of the general creditors of Robinson, and would give to the Reimer Company the benefits of a statute which they did not invoke until after the rights of others had intervened.

We think that section 15 of the lien law has no relation to the present controversy, and, as there is no question that the assignment to Talbot was made in accordance with the provisions of the general assignment law, we see no reason why all of the fund in the hands of the owner of the premises at the time of the assignment did not pass to the ownership of the assignee; nor can we discover any good reason why the appellant should not discontinue to occupy the relation of a general creditor to this fund. If section 15 of the lien law has no bearing upon the case, then the assignment of Robinson to Talbot for the benefit of creditors must stand upon the same footing as an assignment of a portion or all of the fund to an individual creditor before the enactment of section 15 of chapter 418 of the Laws of 1897, and in such a case the court of appeals has said that the "principle to be extracted from the cases is that a lienor obtains no greater right to the moneys payable by the owner than the contractor has, and, if the latter has assigned to a creditor pro tanto, the assignee gains a preference over subsequent liens." Bates v. Bank, 157 N. Y. 322, 328, 51 N. E. 1033, 1034.

The judgment appealed from should be affirmed, with costs. All concur.