### In re JULIUS BROS.

#### Ex parte LEWIS FRANK & SONS et al.

##### (District Court, S. D. New York. October, 1913.)

BANKRUPTCY (§ 407*)—DISCHARGE—TRANSFER OF PROPERTY WITH INTENT TO DEFRAUD CREDITORS.

A sale and assignment by an insolvent within four months prior to his bankruptcy of all of his property, the purchase price to be paid to his attorney and distributed as a dividend to such creditors as would agree to compromise their claims for the amount received, is a transfer in fraud of creditors, which debars the bankrupt from the right to a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 729–731, 737, 738, 740–751, 758, 760, 761; Dec. Dig. § 407.*]

In the matter of Julius Bros., bankrupts. On application for discharge, Lewis Frank & Sons and others filed objections. Denied.

This is an application for a discharge in bankruptcy. The referee has reported against the discharge upon the ground that the bankrupts conveyed their property within four months of the bankruptcy, with intent to hinder, delay, or defraud their creditors. The bankrupts made an assignment of all their assets to a corporation in exchange for $1,550, which was to be paid to their attorney, who also represented the creditors' committee appointed at a meeting of all creditors, with directions to distribute it as a dividend to all creditors who should agree to compromise their claims for that amount. The two objecting creditors refused to compromise, and the attorney, with the bankrupts' assent, and that of the creditors' committee, thereupon appropriated their dividends in payment of his services. Bankruptcy afterwards followed.

Malcolm Sundheimer, of New York City (A. Maurice Levine, of New York City, on the brief), for bankrupts.

Harry L. Herzog, of New York City, for objecting creditors.

HAND, District Judge. It is undoubtedly a question of some uncertainty whether an assignment for the benefit of creditors will bar a discharge, and if the bankrupts in this case had unconditionally assigned their assets for distribution among their creditors I should feel some doubt of the correctness of the master's report. Reed v. McIntyre, 98 U. S. 507, 25 L. Ed. 171. However, they did nothing of the sort. They sold their assets to a corporation made up of their relatives, and gave the purchase price to their attorney to distribute, upon condition that each creditor should compromise his debt on getting his dividend. If he refused, as these creditors did refuse, he was to be totally excluded, and in fact his share finally went to the bankrupts' attorney. This is a wholly different thing from an assignment for the benefit of creditors, which leaves the debts outstanding precisely as they were, save the amount paid as dividend.

It seems to me perfectly clear that such a transfer is fraudulent, however much the bankrupt may think he has the right to make it, because fraud is not synonymous with personal sin, and a man may honestly justify quite illegal purposes. Nor is it one's inward justification of his conduct which counts, for this is not a court of conscience. It is wholly a question of whether the things proposed did in fact result in depriving the creditors of their rights. In re Condon (D. C.) 198 Fed. 947. Of course the creditors must show that the bankrupt knew the result of his act would deprive them of their rights —that is, the element of intent—but it is quite irrelevant whether in his own mind he had an honest justification. If the authorities cited by the bankrupts must be interpreted as meaning that every bankrupt will be discharged, no matter what his conduct, provided he believes it honest, I shall not follow them, since none is authoritative in this district.

If, therefore, conscious wrongdoing be not necessary to fraud, and if the determination of guilty intent depends upon the actual effect of the actor's purposes, then a fraudulent intent existed in this case, because the purpose was to coerce the creditors into a compromise under penalty of getting nothing at all. No bankrupt may exact of his creditors any such consideration as a condition upon giving them their dividend from his property. South Danvers National Bank v. Stevens, 5 App. Div. 392, 39 N. Y. Supp. 298.

Nor does it in the least matter that the bankrupts might be in any case entitled to a discharge in bankruptcy. Certainly it is one thing to get a discharge after one has submitted oneself to the bankruptcy court, and another to get it out of hand upon such statement and examination as one may accord sua sponte. No doubt an extortionate creditor has it in his power to abuse an honest bankrupt by insisting upon his getting his release from the bankruptcy court. That is a penalty for an unworthy bar, but a court cannot permit the creditors to be coerced into accepting the bankrupt's statement of his resources, even when the statement eventually turns out to have been correct. The transfer was therefore in fraud of the creditors' rights,

in that it compelled them to surrender their debts upon pain of getting nothing at all. It deprived them of their rights as much as though the whole of the proceeds had not been distributed.

Finally, it is of no consequence that the plan was that of the attorney for the bankrupts and the creditors' committee, and not the bankrupts' plan personally. Though they did as. he said, they knew what they did, and if the result, however well meaning, is not tolerable in law, they have done what the law will not tolerate. As between them and their creditors, his acts are theirs, unless he deceived them, which nobody claims.

Report confirmed, and discharge denied. No costs.