JAMES ARMSTRONG, Respondent, *v.* BORDEN'S CONDENSED MILK
   COMPANY and CHARLES N. TALBOT, as Assignee for the Benefit
   of Creditors of ANDREW J. ROBINSON, Respondents; OTTO E.
   REIMER COMPANY, Appellant, Impleaded with Others.

*Mechanic's lien — a notice filed by a sub-contractor is not effective against a prior
   assignment for creditors made by the contractor.*

The execution and delivery of a general assignment for the benefit of creditors,
   executed by a building contractor, prevents a sub-contractor from obtaining a
   mechanic's lien under a notice thereafter filed.

APPEAL by the defendant, Otto E. Reimer Company, from so
much of a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Kings on the 19th
day of April, 1901, upon the decision of the court rendered after a
trial at the Queens County Special Term, which provides that the gen-
eral assignment to Charles N. Talbot, made the 7th day of March,
1900, and filed in the office of the clerk of the county of New York
on the 8th day of March, 1900, at nine-ten A. M., and in the office of
the clerk of the county of Kings on the 9th day of March, 1900, is
prior to the notice of mechanic's lien of the Otto E. Reimer Com-
pany, filed in the office of the clerk of the county of Kings on the
8th day of March, 1900, at nine-three A. M., and that the balance in
the hands of the Borden's Condensed Milk Company after paying
the amount due on the lien of the plaintiff be paid to Charles N.
Talbot as assignee for the benefit of the creditors of Andrew J.
Robinson.

   *John T. Sackett,* for the appellant.

   *Henry De Forest Baldwin* [ *William R. Barbour* with him on
the brief], for the respondent Charles N. Talbot.

WOODWARD, J.:
   There is no dispute as to the facts in this case.   In August, 1899,
the defendant Borden's Condensed Milk Company, being the owner
of the land described in the complaint, contracted in writing with
the defendant Robinson, under his business name of Robinson &
Wallace, for the construction of a building thereon.   The defend-

ant appellant, Otto E. Reimer Company, was a sub-contractor under this contract and furnished to Robinson materials for the building of the value of $2,799.34, no part of which has been paid. The plaintiff, Armstrong, was also a sub-contractor under Robinson, and furnished materials and labor of the value of $3,159.76. On the 7th day of March, 1900, at nine-fifty-two A. M., the plaintiff filed his notice of lien in the office of the clerk of the county of Kings. On the same day the defendant Robinson made, executed and delivered to the defendant Talbot a general assignment of all his property for the benefit of his creditors, which assignment was duly accepted by the assignee. This assignment was recorded in New York county on March 8, 1900, at nine-ten A. M., and a notice thereof was filed in Kings county on March 9, 1900. On March 8, 1900, at nine-three A. M., the appellant, Otto E. Reimer Company, filed its notice of lien in the office of the clerk of Kings county. There was due to Robinson from Borden's Condensed Milk Company on March 7, 1900, upon the contract of construction, the sum of $4,767.14. The case was tried on March 22, 1901, at Special Term, resulting in a judgment for the plaintiff, with costs, the balance of the fund to go to the assignee, who was held to take precedence over the lien filed by the defendant Otto E. Reimer Company. All of the parties, with the exception of the plaintiff and the defendants, Borden's Condensed Milk Company, Otto E. Reimer Company and Talbot as assignee, defaulted in pleading, and none of the defaulting defendants appeared at the trial. The defendant Otto E. Reimer Company excepted to the decision, claiming that the court erred in holding the rights of the assignee to be superior to those of the Reimer Company, and the question is thus presented whether a general assignment of a building contractor prevents a sub-contractor from obtaining a right to a mechanic's lien under a notice filed subsequent to the execution and delivery of the general assignment.

We have reached the conclusion that the position of the appellant cannot be sustained, and that the court did not err in the disposition of this question. The Lien Law (Laws of 1897, chap. 418, § 4) provides that "if labor is performed for, or materials furnished to, a contractor or sub-contractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subse-

quently earned thereon. In no case shall the owner be liable to pay by reason of all liens created, pursuant to this article, a sum greater than the value or agreed price of the labor and materials remaining unpaid at the time of filing notices of such liens, except as hereinafter provided." The exception mentioned refers to advance payments, collusive mortgages, etc., entered into for the purpose of defrauding lienors and has no bearing upon the present case. Section 11 of the Lien Law provides that at any time after filing the notice of lien the lienor may serve a copy of such notice upon the owner, but "until service of the notice has been made, as above provided, an owner, without knowledge of the lien, shall be protected in any payment made in good faith to any contractor or other person claiming a lien," so that if Borden's Condensed Milk Company, on the morning of March 7, 1900, had paid Robinson the amount of his claim, and the latter had assigned the money, with his other property, to Talbot for the benefit of his creditors, there could have been no question of his right to do so, for it is not pretended that any lien was filed by the Reimer Company until the following day. If Robinson could have taken the money upon his contract on the seventh day of March and transferred the same to his assignee for the benefit of his creditors, is there any reason in law why he might not have assigned his chose in action? No reason suggests itself why a man might not include a fund which might, under some circumstances, be subject to a lien prior to the attaching of such lien, in a general assignment of his assets for a purpose recognized and sanctioned by the laws of this State. If this might be done lawfully, there is no doubt that the assignment took effect from the time of its delivery, and when the Reimer Company filed its notice of lien on the morning of the 8th day of March, 1900, there was no debt owing to Robinson from Borden's Condensed Milk Company, and the lien could not, therefore, attach. "Section 2 of chapter 466 of the Laws of 1877 (the General Assignment Act) provides how a general assignment for the benefit of creditors shall be executed. It must be in writing and acknowledged, and the assignee must assent thereto in writing, and when it has thus been executed and delivered, it takes effect, and the title to the property passes to the assignee. All else required by the statute may be done afterward, and if any of the other requirements are omitted the assignment is not thereby rendered

void. \* \* \* If the assignment were to be held inoperative until recorded, then it would be in the power of the assignee, by simply retaining it in his possession, to defeat its operation." ( *Warner* v. *Jaffray,* 96 N. Y. 248, 252, 253 ; *McIlhargy* v. *Chambers,* 117 id. 532, 539 ; *Franey* v. *Smith,* 125 id. 44, 49 ; *Dutchess 'County Mutual Ins. Co.* v. *Van Wagonen,* 132 id. 398, 402, and authorities cited.) At the time of the assignment to Talbot the Otto E. Reimer Company was a mere general creditor of Robinson, as were other material men, and the assignee took title to all of the property for the benefit of the creditors of Robinson ; the rights of other creditors had intervened before they took any steps to establish their lien under the provisions of the statute. When they did act, Borden's Condensed Milk Company did not owe Robinson anything, and the right of the Reimer Company to a lien depended upon the indebtedness of Borden's Condensed Milk Company to the principal contractor. The Mechanics' Lien Law operates as an attachment of the funds due to the contractor in the hands of the owner of the premises, but when the contractor has lawfully parted with the ownership of such fund, and its title has vested in an assignee for the benefit of all of the creditors of the contractor, the reason for the lien is at an end ; the fund has been appropriated to the payment of the debts of the contractor, including the Reimer Company, and as reason is the soul of law, when the reason of any particular law ceases, so does the law itself. (Broom Leg. Max. [4th ed.] 133.) The provision of the statute (§ 10) that the lien may be filed within ninety days of the performance of the last labor or the furnishing of the last materials is merely a limitation of the period within which the privilege shall be in force, and does not contemplate that the lienor shall have a lien under all circumstances within that time ; it fixes a time within which he must act if he elect to act at all, and if he neglect to exercise the special privilege conferred by the statute until the rights of third parties have intervened he must be content with occupying his position of a general creditor and participate with others in the distribution of the property in the hands of the assignee. The assignee does not occupy the position of the contractor ; he is the trustee for the creditors of the contractor, and liable to them only to the extent of the property which comes into his possession. He does not owe the sub-contractor anything,

except the duty to distribute equally the funds or other property which came to him from his assignor, and the lien cannot attach to the premises of the owner through the assignee for the benefit of the Reimer Company.

The Reimer Company is claiming upon this appeal a right which does not exist at common law; it must, therefore, show that it has complied with the statute, and that it has filed its notice of lien at a time when the lien could attach. It is not enough to show that the notice was filed within three months; it must show that it was filed while the funds due from the owner of the premises belonged to the contractor, for there can be no doubt, under the authorities cited, that Robinson was the owner of a chose in action against Borden's Condensed Milk Company on March 7, 1900, and that he conveyed a good title to such property to his assignee, who can collect the same from the Borden Company, and it cannot be the policy of the law, in the absence of collusion or fraud (and such is not here suggested), to compel the owner of real estate to pay twice for the same work and materials. Any other disposition than that made by the learned court at Special Term would permit the working of a wrong upon the vested rights of the general creditors of Robinson, and would give to the Reimer Company the benefits of a statute which they did not invoke until after the rights of others had intervened.

We think that section 15 of the Lien Law has no relation to the present controversy, and as there is no question that the assignment to Talbot was made in accordance with the provisions of the General Assignment Law, we see no reason why all of the fund in the hands of the owner of the premises at the time of the assignment did not pass to the ownership of the assignee; nor can we discover any good reason why the appellant should not continue to occupy the relation of a general creditor to this fund. If section 15 of the Lien Law has no bearing upon the case, then the assignment of Robinson to Talbot for the benefit of creditors must stand upon the same footing as an assignment of a portion or all of the fund to an individual creditor before the enactment of section 15 of chapter 418 of the Laws of 1897, and in such a case the Court of Appeals has said that the " principle to be extracted from the cases is that a lienor obtains no greater right to the moneys payable by the owner

than the contractor has, and if the latter has assigned to a creditor, *pro tanto*, the assignee gains a preference over subsequent liens." (*Bates* v. *Salt Springs National Bank*, 157 N. Y. 322, 328.)

The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., BARTLETT, HIRSCHBERG and SEWELL, JJ. concurred.

Judgment affirmed, with costs.