(74 App. Div. 481.)

### NEW JERSEY STEEL & IRON CO. v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. ASSIGNMENTS FOR CREDITORS—PROPERTY PASSING TO ASSIGNEE.

An assignment for creditors by a building contractor, who had a contract providing that, in case the owner was compelled to complete the work, and the cost of completion did not exceed the balance due the contractor, the difference should be paid to him, passed to the assignee the amount due the contractor at the time the assignment was made, or whatever became due to him thereafter by reason of the owner's completing the work and leaving a surplus, as against a subsequently filed mechanic's lien.

2. PLEADING—STRIKING OUT ALLEGATION.

An allegation in an answer by the holder of a prior mechanic's lien, who is a defendant in a suit to foreclose a junior mechanic's lien, that the prior lien holder was employed by the contractor on behalf of, and as agent of the owner, which allegation was merely for the purpose of showing that the work was done with the knowledge of the owner, was properly stricken out.

Hatch and Ingraham, JJ., dissenting.

Appeal from judgment on report of referee.

Suit by the New Jersey Steel & Iron Company against Andrew J. Robinson and others to foreclose a mechanic's lien. From a decision for plaintiff, the defendant Charles N. Talbot, as assignee for creditors of Andrew J. Robinson, appeals. Modified and affirmed.

Argued before O'BRIEN, HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Henry D. F. Baldwin, for appellant.
Philo P. Safford, for respondent Columbian Fireproofing Co.
Frederick H. Man, for respondents Pfotenhauer & Nesbit.
Geo. B. Dunn, for respondent Masons' Supplies Co.
Edward J. Patterson, for respondent Mason.
R. M. Martin, for respondents Browne and Donald.
H. B. Closson, for respondents New Jersey Steel & Iron Co. and Mayers & Goodwin.

LAUGHLIN, J. This is an action to foreclose a mechanic's lien. The defendant Robinson was the general contractor with the defendant Kinney, who was the owner of premises situate at the northwest corner of Fifty-Sixth street and Madison avenue, for the construction of a hotel thereon according to certain plans and specifications. The owner agreed to pay the contractor the actual costs of the labor and materials and 5 per cent. in addition to such cost, not exceeding in all the sum of $317,310, and to make payments from time to time during the progress of the work in amounts equal to 90 per cent. of the value of the labor and materials furnished, as such value should be certified by the architect, and in addition 2½ per cent. upon such value on account of said additional 5 per cent. It was provided that the final payment should be whatever sum remained due the contractor, and should be made within 30 days after the complete performance of the work. The contractor entered upon the performance of the work, and performed all of the conditions of the contract down to the 7th day of March, 1900, when he failed in business, and made a general assignment to the appellant for the benefit of creditors. At that time the agreed price and value of the materials theretofore furnished and the labor theretofore performed by the contractor was $134,438.79, and he had been paid on account thereof the sum of $70,398.83, leaving a balance of about $70,000 earned and unpaid. It is not stated whether or not the architect had certified that this amount had been earned, so that it had become due and payable at that time. The plaintiff's lien was filed after the general assignment. The only lienors whose liens were filed prior to the assignment are the firms of Barr, Thaw & Fraser and Owen R. Mason. On the 12th day of March, 1900, the owner duly served a notice upon the contractor, pursuant to the terms of the contract, that, unless he should supply a sufficiency of workmen and materials within three days, the owner would provide the same, terminate the employment of the contractor, and take possession of the premises for the purpose of completing the work. Thereafter, at the expiration of the time specified in the notice, the owner entered upon the premises, and completed the work according to the contract. In the meantime the other liens had all been filed. The contract provided that, in case of completion by the owner, if the cost of completion should not exceed the balance unpaid on the contract, he should pay the difference to the contractor. The amount unpaid on the contract exceeded the cost of completion to the sum of $58,398.86. The referee found that the liens attached to this balance in the order of their priority.

In the case of Armstrong v. Milk Co., 65 App. Div. 503, 72 N. Y. Supp. 1014, it was held in the Second department, upon a controversy arising on another contract made by the defendant Robinson between lienors and his assignee, that the assignment took preference over liens subsequently filed. That decision has been followed by this court in the case of Kane Co. v. Kinney, 68 App. Div. 163, 74 N. Y. Supp. 260. The respondents attempt to distinguish those cases upon the ground that the rights of the lienors did not depend upon the subsequent completion of the work by the owner, but that at the time the liens were filed an amount sufficient to pay the lien had been

earned under the contract, and that the liens attached thereto.  We think that the facts in those cases and this are substantially the same, and that this argument is untenable.   If it be the effect of the decision . in this case that a large balance was due and owing from the owner to the contractor at the time the liens were filed, that balance was likewise due and owing at the time of the general assignment, and the logical effect of the Armstrong Case is that the right to demand and receive such balance passed to the assignee, for the court treated the general assignment the same as an assignment to an individual creditor of part of a fund due, which it was ·held in Bates v. Bank, 157 N. Y. 322, 51 N. E. 1033, took priority over a lien subsequently filed. If the decision in the Armstrong Case is to be followed as a precedent, it should be given effect, and its legitimate effect is that whatever was due at the time of the assignment, or subsequently became due by reason of the owner completing the work under the contract and leaving a surplus, passed to the assignee as against subsequent lienors. In these circumstances, although the contractor failed to perform the contract, the owner having taken possession and completed the work under the contract, the contractor, were it not for the liens, would be entitled to any balance unpaid on the contract after deducting the cost of completion.   Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608;  Edison Electric Illuminating Co. v. Guastavino Fireproof Const. Co., 16 App. Div. 358, 44 N. Y. Supp. 1022; Ogden v. Alexander, 140 N. Y. 356, 35 N. E. 638;  De Lorenzo v. Von Raitz; 44 App. Div. 329, 60 N. Y. Supp. 736.   Therefore, in deciding this appeal, we, for the reasons stated in Kane Co. v. Kinney, supra, should follow the decision in the Armstrong Case.

The defendant Mason, whose lien was filed prior to the assignment, alleged in his answer that he "was employed by the defendant Robinson on behalf of and as agent for the defendant Kinney."   On the trial the referee, under objection and exception, permitted him to amend the answer by omitting the allegation "on behalf of and as agent for the defendant Kinney."   It is claimed that this was error. The allegation was manifestly inserted for the purpose of showing that the work was done with the knowledge and consent of the owner. The lien stated that it was done under a contract with Robinson, and such was the proof upon the trial.   We think the amendment was properly allowed, as no one could have been prejudiced or even surprised thereby.

It appears that the several defendants served their answers upon the codefendants as well as upon the plaintiffs; therefore the defendants whose liens were filed prior to the assignment were entitled to a judgment of foreclosure.   There is no controversy about the facts, and they are all fully found in the decision of the referee.

The judgment should, therefore, be modified accordingly, and direct that the surplus, after the payment of the costs and disbursements of the defendants Barr, Thaw & Fraser and Owen R. Mason, including their costs and disbursements on this appeal and the amount of their liens, be paid to the assignee.   It should also be modified by striking out the award of costs to Bernard McQuillan and Hallsted & Mc-

Naugher, on the ground that they did not appear on the trial. No other costs are allowed on this appeal.

O'BRIEN and McLAUGHLIN, JJ., concur.

HATCH, J. (dissenting). It appears from the facts of this case, which are fully set out in the opinion of Mr. Justice LAUGHLIN, that there are two separate, distinct, and independent funds, which have been produced under different circumstances. $70,761.90 had been earned and was unpaid on the building contract at the time that Robinson abandoned the same and made his general assignment for the benefit of creditors. The completion by Kinney, the owner, after the contractor had abandoned the same, produced a profit of $58,398.86. This fact is important, as, in the view which I take of this case and the decisions which have been rendered determining the rights of the respective parties to the litigation, the distribution of such funds are subject to radically different rules of law. It is stated in the opinion of Mr. Justice LAUGHLIN that the liens of the lienors were found by the referee to attach to the fund of $58,398.86 in the order of their priority. I am not able to find that the referee so determines, or that he made any distinction between the two funds in awarding judgment. By his third conclusion of law he awards to the respective lienors the sum of $70,761.90, with interest from March 7, 1900, to be distributed in the respective sums found to be due the several lienors in his several findings of fact. While it does not clearly appear out of which particular fund the referee intended payment should be made of these liens, yet, as the amount of the sums awarded exactly equal the amount due and payable under the terms of the contract at the time when the contractor abandoned performance, it is quite probable that the referee had in mind an adjustment of these liens based upon such sum. Such, also, is the contention of the respondent lienors. The decision of Mr. Justice LAUGHLIN is made to rest, in the construction of the rights and liabilities of the lienors, upon the case of Armstrong v. Milk Co., 65 App. Div. 503, 72 N. Y. Supp. 1014. That was a decision by the Second department in construction of this contract and the rights of certain lienors thereunder which were filed subsequent to the making of the general assignment for the benefit of creditors. The rule of that case was adopted and applied to certain other lienors occupying a similar position in Kane Co. v. Kinney, 68 App. Div. 163, 74 N. Y. Supp. 260, by this department. It is concluded therefrom that these decisions require a holding that the sums due and payable at the time when the general assignment was made as to the liens filed subsequent thereto, and also as to the sum subsequently earned by the performance of the contract by the owner, passed to the assignee, as against such subsequent lienors. No question arises in the case respecting the right to payment of these lienors who had filed their liens prior to the assignment. As to such liens, they are entitled to payment out of the sum earned and due to the contractor at the time he made the assignment. No discussion is needed, therefore, as to their rights. I do not under-

stand that these decisions require, as a legitimate result, a holding that the assignee took title, as against the lienors subsequent to the assignment, of that portion of the fund which was earned and became due to the contractor by the performance of the contract by the owner. There is nothing which appears in the Armstrong Case to show which fund, if any, that decision related to. It can be satisfied by limiting its application to the fund due under the terms of the contract at the time when the assignment was made. Without at this time considering the soundness of the Armstrong decision, I assume that it may be upheld as to the fund then due, but only upon the assumption, as it seems to me, that the assignee complied with the lien law, and thereby stood upon the same footing as a lienor. It is evident that, in order to acquire a lien, the party entitled thereto must take the steps essential to perfect the same as required by the lien law, and without taking such steps he acquires no lien. In the Armstrong Case the court gave force and effect to this rule of law, holding that an assignee for the benefit of creditors occupied the same position as any other assignee of the contractor, and in the absence of any lien, took title to the moneys earned, due and payable by the terms of the contract. Nothing which appears in the report of that case shows that the court considered any other or different question. It was not considered what was the attitude of the assignee and lienor as to the subsequent performance of the contract. Such question rests upon entirely different principles not considered in the opinions delivered in the two cases now assumed to be controlling. While giving force and effect, therefore, to these authorities, we are not barred from considering this phase of the question. The first pertinent subject of investigation is, what property right did the assignee take in and to this contract, which remained unfulfilled at the time when the assignment was made? It is clear that if the owner, at this time, had elected to treat the contract as abandoned, he might rescind the same, and thereby cancel all relations between himself and the contractor, and under such circumstances the assignee would take nothing by virtue of the contract beyond the sum which had been earned thereunder. The right of the assignees, therefore, was dependent upon the election of the owner to fulfill the terms of the contract pursuant to its provisions. If the owner did not so elect, then clearly the assignee took nothing. If the owner did so elect, then he took the contingent value of the contract, represented by the profits which might accrue by its fulfillment, but he took nothing else. Before any profits could be earned, there must have been the fulfillment of the contract according to its terms. Such fulfillment required the performance of work and the furnishing of material to a very large amount. Under these circumstances, can it be held that the assignee could receive all the profits which might be earned by the performance of the contract, and be subject to no liability whatever for labor and materials furnished, or by reason of his position as assignee was he emancipated and relieved from the provisions of the mechanic's lien law? To ask these questions, it seems to us, is to answer them. It is clear that the contractor himself, in the perform-

ance of the terms of the contract, would be subject to all these liabilities, and we know of no authority, either in reason or law, which would enable an assignor to invest an assignee with such extraordinary rights as would give him all the profit and subject him to none of the liabilities which the lien law has established for the protection of contractors, laborers, and material men. No such sacredness hedges about an assignee for the benefit of creditors. It is evident that the property right which he received from his assignor in the contract was to reap the benefits of its completion, subject to the liabilities, under the rules of law, which attached thereto during the process of performance. In other words, whatever rights the assignee took in this contract he took cum onere, and stood precisely in the shoes of his assignor and the owner of the building in the subsequent performance of the contract. Among such liabilities thus assumed was the right of contractors, laborers, and material men to file liens for work and labor done and materials furnished. Such right to take advantage of the lien laws accrued not alone in favor of persons who should furnish labor and material subsequent to the assignment, but the building stood answerable to all persons occupying such relation thereto whether the work was performed prior to the assignment or subsequent thereto, so far as the lien law extended protection to them. In construction of such law it has been held that if a contractor, under a building contract, file his lien at a time when nothing is due thereunder to the principal contractor, no lien attaches; but, if the contractor abandons the performance of the contract, and the owner thereafter performs the same under the terms of the contract, and a profit accrues to the contractor therefrom, such lien attaches to the extent of the difference between the cost of completion and the amount unpaid to the subcontractor or material man when the lien was filed. Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410; Mack v. Colleran, 136 N. Y. 617, 32 N. E. 604; Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017.

It would be a very dangerous rule to announce that a contractor who had forfeited all rights under his contract could, by making a general assignment, invest such assignee with right to obtain and receive the profits of such contract, thereafter fulfilled by the owner, relieved entirely from the rights of those persons which the lien law protects. Assignments might be frequent under such a rule. The decision by the Second department might be given force by limiting it in its application to the fund which had become due and payable, under the terms of the contract, at the time when the assignment was made. If this rule were to be applied, the lienors whose liens were filed subsequent to the execution of the assignment would become entitled to enforce the same against the last-named fund earned under the contract. As, however, their liens were adjusted upon the basis that payment may be made from the first-named fund, they could not be sustained to that extent, but would be scaled down pro rata, in the order of their priority, in an amount proportioned to the fund out of which they were to be paid. Neither the building nor the owner stands sponsor for their payment, so far as the respond-

ent lienors are concerned, for a greater sum than the amount represented by the profit earned by the completion of the contract. This result leads to the conclusion that, notwithstanding the decision in the Armstrong Case, it is not controlling of the fund earned under the contract after the assignment, and would lead to a readjustment of the several items if it were the only fund applicable to their payment. I am of opinion, however, that not alone is the fund earned by the owner in the performance of the contract subject to these liens, but that the sum due under the contract at the time when the general assignment was made is also subject to such liens in preference to the title obtained by the assignee. By virtue of the provisions of section 15 of the mechanic's lien law, an assignment of a contract or of the money, or any part thereof, due or to become due thereunder, in order to be valid, shall set forth the contract itself, or a statement containing the substance thereof, and such assignment or a copy shall be filed in the office of the county clerk of the county wherein the real property improved is situated. The same only becomes of effect from the time of such filing, and the clerk is required to enter the facts relating thereto in the lien docket, or in a book provided for such purpose. The present record does not contain the general assignment made by Robinson. The answer, however, of his assignee, refers thereto, and avers that it was a general assignment for the benefit of creditors and was filed in the county clerk's office. The answer of Robinson is to the same effect, and the finding of the referee based thereon is that Robinson failed in business; made a general assignment for the benefit of creditors; that the same was duly acknowledged, filed, and recorded in the office of the clerk of the county of New York on March 3, 1900, but that "no copy of the said contract between Robinson and Kinney was filed with said assignment," nor any statement made of its contents, nor does it otherwise appear. It is true that the court in the Armstrong Case held that section 15, to which we have referred, bore no relation to the controversy then before the court, and had no bearing upon the case, but that the general assignment carried title to the fund. This conclusion was based upon Bates v. Bank, 157 N. Y. 322, 51 N. E. 1033. No such question was raised in that case, so far as is disclosed in the reported opinion. The assignee therein was assumed to have complied with all the requirements of the law, and therefore his status was precisely that of a lienor, and he was entitled to be paid in like manner in order of priority, and for that reason alone the assignee therein was held entitled to the benefits of the statute. The question as to whether he had properly filed his assignment or not, as required by the lien law, was not the subject of discussion in that case. The main subject related to a provision of the contract requiring that no payment should be made until the contractors had obtained a certificate from the county clerk showing that on the date of such payment no liens existed, and it was held that this provision of the contract was for the protection of the owner, and that, where the assignee had complied with the law, he secured the same rights as did a lienor in the order of his priority. In Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E.

779, it was held that this provision of the statute applied to assignments, and that compliance must be had therewith. The question which that case presented related to whether its provisions applied to a public contract, and it was held that they did. But the case is clear in its expression that compliance must be had with the terms of the statute in order to acquire a valid assignment, and thereby obtain a lien in preference to lienors who had properly filed their liens. The Bates Case did not touch such question, as it was assumed therein that the assignee had complied with the requirements of the mechanic's lien law. The Brace Case was decided in June, 1901; the Armstrong Case in November of the same year. Evidently the Brace Case escaped the attention of the court when that decision was rendered. In the record before us we have an express finding of the referee that compliance was not had with this provision of the mechanic's lien law, in consequence of which, by virtue of the express provisions of that statute, the assignee acquired no right to either fund as against these lienors.

It follows that the judgment should be affirmed, with costs to the respondents.

INGRAHAM, J., concurs.