## In re INTERSTATE PAVING CO.

### In re SMITH.

(District Court, N. D. New York. June 24, 1912.)

1. MUNICIPAL CORPORATIONS (§ 353*)—PUBLIC IMPROVEMENT CONTRACTS—ASSIGNMENTS—FILING—NECESSITY.

Under New York Lien Law (Laws 1897, c. 418) § 15, as amended by Laws 1907, c. 360, effective May 23, 1907, which requires assignments of contracts for the improvement of real property to be filed with the county clerk, and under Act July 22, 1907 (Laws N. Y. 1907, c. 692), creating a new section of the lien law (section 15a), which requires assignments of contracts for public improvements to be filed with the head of the department having charge of the improvement, filing of assignments of the latter class with county clerks is not required.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 885; Dec. Dig. § 353.*]

2. BANKRUPTCY (§ 151*)—TRUSTEE—TITLE TO PROPERTY.

A trustee in bankruptcy takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition subject to all valid claims, liens, and equities.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 193; Dec. Dig. § 151.*]

3. MUNICIPAL CORPORATIONS (§ 353*)—PUBLIC IMPROVEMENT CONTRACTS—ASSIGNMENT—FAILURE TO FILE—EFFECT.

Failure to file an assignment of a municipal improvement contract, as required by New York Lien Law (Laws 1907, c. 692) § 15a, does not

defeat the assignee's right to the proceeds of warrants issued under the contract as against the contractor's general creditors; the statute being for the benefit of the city and creditors having lienable claims.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 885; Dec. Dig. § 353.*]

In the matter of Interstate Paving Company, bankrupt. On petition by Alfred G. Smith to review an order refusing to direct the trustee to indorse over to petitioner certain municipal warrants. Reversed.

See, also, 171 Fed. 604.

Frederick M. Calder, of Utica, N. Y., for petitioner.

Martin & Jones, of Utica, N. Y., for trustee.

RAY, District Judge. On or about November 19, 1906, the Interstate Paving Company, now bankrupt, entered into two contracts with the city of Niagara Falls for the paving of Fifth street, in said city, and February 9, 1906, another contract was entered into between the same parties for the paving of Niagara street, in said city, and on the 25th day of February, 1906, the same parties entered into a contract for the paving of Eleventh street, in said city. The Interstate Paving Company completed the performance of said contracts according to the terms thereof on or before August 1, 1908, except that the petitioner, after the assignment hereinafter mentioned, performed certain work on one of the streets for which he was paid $158.74 in completion of such contract. Certain final payments thereon were deferred according to the terms of such contracts for reasons not necessary to state. During the performance of such contracts one Irvin A. Williams advanced large sums of money to said Interstate Paving Company, and also indorsed the notes of said company to a large amount, and, same not having been paid, said Williams was duly charged with and became liable for their payment. The liability of the said Paving Company to said Williams on account of advancements and such indorsements prior to October 12, 1907, was the sum of $113,819.99, exclusive of interest. Thereafter said Williams continued to indorse notes for said Paving Company on which he was charged and made liable and to make advancements to it amounting, exclusive of interest, to the sum of $118,189.67, total $232,009.66, all before the bankruptcy. On the 27th day of May, 1909, said Interstate Paving Company was duly adjudicated a bankrupt, and June 15, 1909, John H. Grant was duly appointed trustee of the estate and qualified as such.

On said 12th day of October, 1907, said Interstate Paving Company made, executed, acknowledged, and delivered to said Williams four separate assignments of the moneys earned, due, and to become due to it on the said contracts for paving, respectively. These assignments are absolute in form, and clearly refer to the contracts. One assignment relating to one of the Fifth street contracts purports to assign $4,700 as due, owing, and to become due thereon, and the other relating to Fifth street purports to assign $14,000 as due, owing, and to become

due thereon, and the assignment relating to the Eleventh street contract purports to assign $48,000 as due, owing, and to become due thereon, and the assignment relating to the Niagara street contract purports to assign the sum of $70,000 as due, owing, and to grow due thereon; in all $136,700. These assignments were filed by said Williams in the office of the city clerk of the said city of Niagara Falls, N. Y., on the 19th day of October, 1907. On or about the 30th day of January, 1909, said Irvin A. Williams, such assignee named in such assignments, for value received duly sold, assigned, granted, and conveyed to said Alfred G. Smith, the petitioner here, his executors, administrators, and assigns, all moneys due and payable or to become due and payable to said Williams by virtue of such contracts and the assignments of the moneys due and payable, or to become due and payable thereon as hereinbefore stated. This assignment duly executed was filed in the office of the city clerk of the city of Niagara Falls, N. Y., on the 6th day of December, 1909. The final sums or payments retained on such contracts became due and payable about August 1, 1909. The balance on the Niagara street contract was $2,486.72, the balance on the Eleventh street contract was $1,979.08, and the balance on one of the Fifth street contracts was $722.32, and on the other $218.37; in all $5,404.49. August 25, 1909, the following warrant was drawn on the city treasurer of the city of Niagara Falls, and duly signed and delivered to the petitioner who now has same, viz.:

"Local Assessment Fund, No. 68.

"$218.37.                 The City Treasurer                 No. 625.
of the City of Niagara Falls, N. Y.

"Pay to the order of Interstate Paving Company two hundred eighteen 37/——— dollars out of local assessment fund No. 68, being for retained % on paving contract No. 68.                 A. C. Douglass, Mayor.

"Dated Niagara Falls, Aug. 25, 1909.
"Thos. H. Hogan, City Clerk."

The same day another like the above, except it was for $722.32 and refers to another of the contracts, was drawn and delivered. October 13, 1909, a warrant for the sum of $1,979.08, the same in all other respects as the one quoted except as it referred to another contract, was drawn and delivered, and December 29, 1909, another warrant the same in all respects, except as it referred to another of the contracts and was for $2,486.72, was drawn and delivered, all to the petitioner herein. These are the warrants in question. After the adjudication in bankruptcy and the appointment of the trustee, said Irvin A. Williams duly filed a proof of his claims in the bankruptcy court for the amounts stated, $113,819.99 and $118,189.67, exclusive of interest, and in same gave and allowed a credit of $5,766.16, consisting of the amounts due on and under the said warrants $5,404.49 and certain additional items, making $5,766.16 in all. It is conceded that in such proof of claim it "does not appear that such claims [of Williams] were for materials furnished or services rendered the Interstate Paving Company in the prosecution of the paving contracts in the city of

Niagara Falls, described in the petition herein." A large number of claims have been proved and filed against the bankrupt, some of which are for goods purchased and work performed while the Interstate Paving Company was engaged in performing the contracts, but no liens were filed nor judgments obtained.

[1] The contention of the trustee in bankruptcy is that such assignments were not filed with the proper officer as provided by the statutes in such cases made and provided, and that for this reason they were and are inoperative to carry title to the moneys due on such contracts and to such warrants to Williams and Smith his assignee as against the trustee in bankruptcy and the general creditors of the Interstate Paving Company, and that the title thereto is in the trustee in bankruptcy, while the contention of the petitioner, Mr. Smith, is that the assignments were properly filed, or if not, were so filed as to give notice, and that there was a substantial compliance with the statutes, and that, in any event, the purpose and object of the filing required by the statute is to protect lienors and subcontractors, and that, in the absence of lienors and subcontractors having any claim, it is immaterial whether such assignments were filed or not. It is also contended by the petitioner that in the absence of fraud, of which there is no pretence here, the trustee takes only the interest of the bankrupt in the property, takes it in the same plight and condition it was when bankruptcy intervened, and subject to all the equities impressed upon it in the hands of the bankrupt or prior to the bankruptcy. The petitioner contends that as against the general creditors of the bankrupt corporation, Interstate Paving Company, the title of Williams was good, and consequently that of his assignee, this petitioner, is good.

Chapter 418 of the Laws of N. Y. 1897, "An act in relation to liens, constituting chapter 49 of the General Laws," and known as the "Lien Law," relates to "mechanic's liens" and provides in section 2 that the term "public improvement," when so used, means "an improvement upon any real property belonging to the state or municipal corporation." Section 5 provides for a lien on the agreed price of the work, etc., to be done by the contractor. Section 12 provides for the filing of such lien. Section 14 provides for the assignment of such lien, and section 17 for the duration of such lien, and section 20 for the discharge by lapse of time.

Section 15 provides as follows:

"Assignments of contracts and orders to be filed. No assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or subcontractor upon the owner of such real property for the payment of such money shall be valid, until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order, be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated, and such contract, assignment or order shall have effect and be enforceable from the time of such filing. Such clerk shall enter the facts relating to such assignment or order in the 'lien docket' or in another book provided by him for such purpose."

By chapter 360, Laws of N. Y. 1907, which became a law May 23, 1907, this section (section 15) was amended so as to read as follows:

"Assignments of contracts and orders to be filed. No assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or subcontractor upon the owner of such real property for the payment of such money shall be valid, until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order, be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated, and in case of a contract with a municipal corporation, also with the comptroller or chief fiscal officer thereof, and such contract, assignment or order shall have effect and be enforceable from the time of such filing. Such clerk shall enter the facts relating to such assignment or order · in the 'lien docket' or in another book provided by him for such purpose."

I doubt whether the original or amended section (15) had any application whatever to the assignment of contracts for public improvements on the streets in a city.

In Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E. 779, the Court of Appeals held differently, however, while it affirmed the judgment of the court below. But that case was one for the erection of a building on lands owned by the city.

It is evident that the Legislature had doubt, for after the enactment of the amendatory section of May 23, 1907, and on the 22d day of July, 1907, it enacted the following (Laws of 1907, c. 692):

"Section 1. Chapter four hundred and eighteen of the laws of eighteen hundred and ninety-seven, entitled 'An act in relation to liens, constituting chapter forty-nine of the general laws,' is hereby amended by inserting therein, after section fifteen, a new section to be section fifteen-a thereof, to read as follows: § 15-a. Assignment of contracts and orders for public improvements to be filed. No assignment of a contract for the performance of labor or the furnishing of materials for a public improvement, or of the money, or any part thereof, due, or to become due, therefor, nor an order drawn by the contractor or subcontractor upon the municipal corporation, or the head of the department or bureau having charge of the construction of such public improvement, or the financial officer of the municipal corporation, or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement, shall be valid until such assignment or order, or a copy thereof, be filed with the head of the department or bureau having charge of such construction, and with the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement, and such assignment or order shall have effect and be enforceable from the time of such filing. The financial officer of the municipal corporation, or other officer or person with whom the assignment or order, or copy thereof, is filed, shall enter the facts relating to the same in the lien book or other book provided for such purpose."

This new section amendatory of the act itself, and not of section 15, was in force when the Interstate Paving Company made the assignments to Williams of the moneys, etc., due and to grow due on the paving contracts referred to. To make such assignments good as against payments by the city to the Interstate Paving Company on such contracts, or either of them, or to assignees of the money due, etc., thereon who should have recorded their assignments in the man-

ner specified and with the officers specified, or as against any one entitled to file a lien and who had actually filed a lien according to the terms of the act with the proper officials, or who should do so within the time limited by the act, it was necessary for Williams to file his assignments or a copy thereof with the head of the department or bureau having charge of the paving of the streets in the city of Niagara Falls, and also with the financial officer of said city, or such other person as was charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement; that is, the payment of such contracts. It is evident that it was the purpose to give notice of such assignment to the department having the work in charge and to the officer disbursing the money applicable and to be applied to the payment therefor. If so filed, the money could and would be paid to the true owner of such moneys. If not filed, payment to the contractor would be good so far as the city was concerned and protect it. The act relates to liens, and was not intended to make null and void and of no force or effect such assignments as between the parties thereto, or the contractor and the city, in case such assignments were not recorded, or in case the city had actual notice thereof and the rights of other parties could not be affected by the nonfiling. The act was intended to protect the city municipality owing the money and making the payments and its officers, and all persons who should have the right to file liens and who should file them within the time limited by the act, and all assignees of the money due or to grow due who should duly file their assignments.

Section 15, above quoted, as amended May 23, 1907, in terms applies to assignments of contracts for the performance of labor or the furnishing of materials for the improvement of real property, or of the money or any part thereof due or to become due therefor, and orders drawn by a contractor or subcontractor upon the owner of such real property for the payment of such money and evidently relates to improvements on real estate as such whether owned by private parties, individuals, and corporations or municipalities. In such cases there is reason for requiring the assignment to be filed in the county clerk's office like a deed or mortgage, as it, in a way, becomes a lien on the real estate, and affects the title, and here is the place to look for liens on land. But in the case of mere public improvements, such as the paving of public streets, where the title to real estate is not affected, where the street may or may not be owned by the municipality, but where in either event the payment or nonpayment of the amount due for the improvement can in no way affect the street or the title thereto, or the rights of the municipality or public therein and thereto, there is no reason for filing the assignment in the office of the county clerk. In the Brace Case the contract was for the erection of a schoolhouse on land owned by the city. Having all this in mind, the Legislature added a new section to the Lien Law, viz., section 15a, which follows section 15, and relates to the "assignment of contracts and orders for public improvements," such as paving streets and cured the defect in the statute, if

there was one, but, in any event, it so modifies and limits section 15 that it has no application to the assignment of contracts and orders for public improvements, such as contracts for paving streets in a city or municipality or the money due or to become due thereon. This distinction was plainly pointed out by the Appellate Division in the Brace Case, and is referred to by the Court of Appeals. In view of that case, it is evident that the Legislature intended to dispense with the filing of assignments and orders for public improvements, such as improvements on streets, in the office of the county clerk. As to such contracts the act of July 22d is inconsistent with the act of May 23d, and the section to which that was an amendment. As to such contracts and assignments as are involved here, the act of July 22d covers the whole subject, and takes the place of section 15 quoted. Otherwise it is misleading. The act of May 23, 1907, said, "And in case of a contract with a municipal corporation also with the comptroller or chief fiscal officer thereof," while the new section 15a (Act July 22d) says nothing as to filing in the office of the county clerk, but says:

"Be filed with the head of the department or bureau having charge of such construction and with the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement," etc.

I conclude, therefore, that in no event was it necessary to file these assignments in the office of the county clerk of the county.

[2, 3] If this provision of the Lien Law makes such an assignment void or invalid if not filed as the act directs, as between the contractor doing the work and the municipality, having actual notice thereof, then we must inquire whether it was properly filed. If the nonfiling as directed makes the assignment void or invalid as to a trustee in bankruptcy of the contractor representing general creditors, then we must inquire whether these assignments were properly filed. In this case the Interstate Paving Company was adjudicated a bankrupt on the 27th day of May, 1909. The contracts were completed August 1, 1908. There is no evidence the work was not accepted at that time.

Section 12, of the Lien Law referred to, as amended (chapter 37, Laws of 1902), provides:

"Notice of lien on account of public improvements. At any time before the construction of a public improvement is completed and accepted by the state or by the municipal corporation, and within thirty days after such completion and acceptance, a person performing work for or furnishing materials to a contractor, his subcontractor, assignee or legal representative, may file a notice of lien with the head of the department or bureau having charge of such construction and with the comptroller of the state or with the financial officer of the municipal corporation, or other officer or person charged with the custody and disbursements of the state or corporate funds applicable to the contract under which the claim is made."

As no liens were filed by any creditor of the Interstate Paving Company within three months before or after the completion and acceptance, the right to such lien, if any such right existed, ended in November, 1908, or about five months prior to the bankruptcy.

The bankruptcy in no way interfered with the filing of liens. No creditor, stands in the shoes of a lienor, and the trustee does not occupy any such position. Were these assignments good and effectual to pass the title to the moneys due on such contracts, or to become due and payable thereon, to Williams, in the absence of any filing whatever, and in the absence of any lien thereon?

It is now settled that a trustee in bankruptcy "takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition subject to all valid claims, liens and equities." Zartman v. First National Bank, 216 U. S. 134, 138, 30 Sup. Ct. 368, 54 L. Ed. 418, affirming 189 N. Y. 533, 82 N. E. 1126, and citing Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and referring to the cases there cited; and "a trustee in bankruptcy does not stand like an attaching creditor; he gets no lien by the mere fact of his appointment." Sexton, as Trustee of Kessler & Co. v. Kessler & Co., Limited, and Frank Youatt, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. ——, decided by the Supreme Court of the United States, May 27, 1912, not yet officially reported. If, therefore, filing of the assignments was not necessary to carry title to the money to Williams thereunder as between the contractor Williams, and the city, in the absence of equities or liens in favor of other parties, the rights of Williams and his assignee, this petitioner, are superior to those of the trustee, and the order of the referee should be reversed. Where a general assignment is made for the benefit of creditors, the assignee takes his title subject to the rights of creditors entitled to file liens, and who do so within the time limited for the purpose by the statute, even if filed after the assignment is executed and recorded. John P. Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619, reversing 68 App. Div. 163, 74 N. Y. Supp. 260, and overruling Armstrong v. Bordens, etc., 65 App. Div. 503, 72 N. Y. Supp. 1014. A trustee in bankrutcy would take his title subject to the same right, and this petitioner held under his assignment subject to the same right, but the time to file liens expired long before the bankruptcy, and there is no lien in existence.

The question, then, is whether the nonfiling of the assignments (assuming there was no compliance with the statute in that regard) makes the assignments inoperative to create a right to these warrants and the moneys to be paid on same in the petitioner superior to that of the trustee in bankruptcy. It will be noticed that these warrants were signed by the city clerk, with whom the assignments were filed, and that they were delivered to the assignee, Smith. There is no question that the city and its officers knew of the assignments and of the rights of Smith, if any.

In Van Kannel Revolving Door Co. v. Astor et al., 119 App. Div. 214, 104 N. Y. Supp. 653, the court gives construction to section 15, and says:

"But, when we concede that there was an equitable assignment 'of the money or any part thereof due or to become due therefor,' we bring the case within the letter and spirit of the section of the statute above quoted, and which was intended to protect the rights of subcontractors and materialmen

in the funds in the hands of the owner or contractor at the time of filing the lien, unless record notice of the existence of such assignment was given. * * * It constituted merely an equitable assignment of a fund for the payment of subcontractors when their work should be completed under Grissler & Sons' contract, and such an assignment is required to be filed in the manner pointed out by the statute before it can become operative as against subsequent liens. * * * These cases have dealt with a variety of facts, but they have all recognized the effect of section 15 of the Lien Law, as requiring equitable assignments to be filed in order to become effective as against subsequent liens."

The headnote reads:

"Section 15 of the Lien Law, providing that an order drawn by a contractor or subcontractor for the payment of money shall not be valid as against subsequent liens unless filed in the office of the county clerk, applies to equitable assignments which must be filed in order to become operative against subsequent lienors."

In Armstrong v. Chisolm, 99 App. Div. 465, 469, 470, 91 N. Y. Supp. 299, the court says, speaking of the necessity of filing as required by section 15 of the Lien Law:

"Prior to the general assignment, the payee of the orders had acquired inchoate rights, at least, which neither the contractor nor his assignee could prevent his completing and perfecting by filing the orders, as required by section 15 of the Lien Law, even if compliance therewith were necessary as against the owner or his general contractor. If the assignments were not valid even as against the general assignee of the contractor until filed, which is by no means certain and it is unnecessary to decide, still the assignee took title subject to the right of the payee to file the assignment and perfect his right to the fund."

In Tolkow v. Metropolitan Life Ins. Co., 73 Misc. Rep. 393, 133 N. Y. Supp. 367, a contractor gave an order to a subcontractor upon a corporation furnishing a building loan to the contractor which directed payment to the subcontractor of money to come due under the building loan agreement. The order was accepted. Held, that section 15 of the Lien Law, requiring the filing of assignments, was applicable, and that the failure to file the order was available to the corporation as a defense in an action based on the assignment, provided it had pleaded the existence of liens prior to the assignment.

In Harvey v. Brewer, 178 N. Y. 5, 70 N. E. 73, the court said of section 15:

"That section indicates that the Legislature was of the opinion that the protection of the laborers and materialmen made it necessary that notice of an assignment of the contract or the moneys due thereunder or some part thereof, or an order drawn by a contractor upon the owner, ought to be given to those interested," etc.

All this indicates clearly the opinion of the courts that this is a remedial statute, and enacted in and as a part of the Lien Law for the protection of laborers and materialmen by giving notice by the filing of assignments of the fund, or orders on the fund, etc. It was not designed as a declaration that all such assignments and orders shall be void as between the owner and contractor, or owner and assignee of the contractor, or contractor and assignee, in the absence of liens or other assignments duly filed, unless filed as di-

rected by the statute. "A mechanic's lien statute should be so construed as to render the greatest amount of benefit to those for whose interest it was made and at the same time save the other class of persons upon whom it operates from injury as far as practicable." 27 Cyc. 21; Patrick v. Ballentine, 22 Mo. 143. That this is the true construction of this statute is shown by the decision in Harvey v. Brewer, supra, where an order was given, not filed as required, but accepted and paid. The order was accepted and paid. It was held that this constituted a payment. But how could this order given and accepted, but not filed as required by the statute, constitute a valid payment if such orders (plainly within the terms of the statute) are invalid if not filed? As this statute is (giving it the broad and comprehensive effect claimed) in derogation of common law and common right—that is, one which imposes restrictions on the control and alienation of property and restrains the freedom of contracts—it must be strictly construed as to its general scope (36 Cyc. 1179, 1180, and cases cited); and the legislative intent is to be determined from a general view of the whole act and with reference to the subject-matter to which it applies and the particular topic (mechanic's liens) under which the language is found (36 Cyc. 1128, and cases there cited), and it must be construed with reference to the object intended to be accomplished by it (36 Cyc. 1110, and cases cited). The topic is mechanic's liens, and the object, as the courts have frequently said, to give notice to laborers and materialmen so they can promptly file liens, and to the parties making payments so they can pay to the proper parties. What good purpose is to be accomplished by providing that an assignment of the money due or to grow due on a contract for a public improvement in a city shall be invalid unless filed as between the assignor and assignee thereof, when the municipality has notice so as to pay to the proper party and the proper party claims and there is no other assignee of the fund and no lienor and the time to file liens has expired? The provision is found in the Lien Law, and confines its operation to a declaration that such assignments are void or invalid, if not filed, as to the municipality making payments in good faith to the contractor or his assignee who has recorded his assignment, and to lienors, and the purpose is fully accomplished.

In this case there was no attempt or intent to evade the law or to conceal the assignments. On the other hand, there was an honest attempt to comply with the law. If the city clerk is not the officer with whom the assignments should have been filed, no harm has come or can come to any creditor by reason of the mistake. As stated, the city has executed the warrants bearing the signatures of the mayor and city clerk. They are made payable to the bankrupt corporation, which corporation did the work, but the city having notice, delivered them to the assignee, Smith, and it is left to the courts to determine whether the assignee under the assignments or the trustee in bankruptcy, representing general creditors, is entitled to the money when paid. The city is protected in any event. It cannot be injured. It had actual notice, the assignments having been filed with its city

clerk, and no one has been misled. Was there a substantial compliance with the statute? The act of July 22, 1907 (chapter 692, Laws of 1907), requires that the assignment, or a copy thereof, "be filed with the head of the department or bureau having charge of such construction and with the financial officer of the municipal corporation, or other officer or person charged with the custody and disbursement of the corporate funds applicable to the contract for such public improvement," etc. This requires a double filing. It seems here that the city clerk was a person charged with the disbursement of the corporate funds applicable to the contracts in question, for he has signed the warrants directing payment. It is unusual to place the custody of such funds in the hands of the officer directing and controlling the payment or disbursement. I think that under the charter of the city of Niagara Falls the treasurer had the custody and the actual physical disbursement of the funds. But he did not, and does not, control such disbursement. He is a depositary, and pays out on the orders or warrants of others. These contracts were executed in behalf of the city by the "Board of Public Works" of which the mayor was ex officio president. The city clerk is and was the secretary of this board of public works. He was not the actual head of the board, but the clerk of the head and the clerk, secretary, recording officer of the entire board. I think that, when these assignments were filed with the secretary of that board, they were in legal effect filed with the board of public works and with the president of that board, the mayor of the city. In Asphalt Paving & Contracting Co. v. City of New York (action No. 1) 134 N. Y. Supp. 442, recently decided but not yet officially reported, money due on a contract for public improvement was assigned but the assignment was not filed at all. There were no other assignments and no liens. The assignee sued the city on the assignment. The case was tried before Justice Foote and a jury, who directed a verdict for the plaintiff on the assignment, and the Appellate Division affirmed the judgment. One defense was that the assignment had not been filed as required by section 15, c. 360, Laws of 1907, and this fact was conceded.

It is urged by the trustee in bankruptcy here that, as some of these general creditors might have filed liens during the progress of the work or thereafter within the statutory time for filing liens, it may be inferred that they did not, relying on the fact that money due and to become due on these contracts would come into the hands of the contractor to pay their claims. I do not think such an inference can be justified. The right to a lien was lost by not filing same within the statutory period, and there is no statute which gives a trustee in bankruptcy a lien or priority on such a fund, for the reason he represents some creditors who performed labor and furnished material, but who did not avail themselves of their statutory rights. If this money should be paid to the trustee, it would not be charged with any equity in favor of those creditors who at one time were in a position to file liens but did not. The court in bankruptcy is a court of equity, but it is bound by the usual rules and principles

of equity jurisprudence, and cannot build up a lien on a mere equity in favor of one creditor as against another. Clearly, when a creditor has a right to file a lien, and fails to exercise that right, he must be understood (in the absence of fraud or some excuse recognized in the law) to have waived or abandoned it. The learned referee, if I understand him correctly, placed his decision on the ground that as under section 70 of the bankruptcy act the trustee takes the title of the bankrupt as of the date of adjudication, and as any creditor, prior to bankruptcy, could have proceeded to judgment and by execution, etc., have reached these moneys because of the nonfiling of the assignments, therefore the trustee is in the same position. This, of course, depends on whether or not such an assignment as these were is void if not filed as required by the statute as to general creditors. The title to these moneys passed to the assignee of the Interstate Paving Company as against all creditors who had no right to file a lien, and as against those who had such right, but failed to do so. The nonfiling of a chattel mortgage makes it void as against all creditors whether they have a lien or not, but they cannot enforce their remedy until a judgment is obtained and execution is returned unsatisfied. This goes to the remedy, and not the right. When prevented by bankruptcy proceedings from proceeding to judgment, etc., the trustee in bankruptcy may avail himself in their behalf of the statute. Skilton v. Codington, 185 N. Y. 80, 86, 89, 77 N. E. 790, 113 Am. St. Rep. 885, but not as against a purchaser of such property. Same case, 185 N. Y. at page 89.

But here the statute (Lien Law) fails to make the assignment void as to general creditors, or creditors entitled to file liens in case they fail to do so. Hence the assignments were good as between the Interstate Paving Company (the bankrupt) and the assignee thereof and between such assignee and creditors, who did not file liens even if they proceeded to obtain judgments before the assignments were filed, and, being good as between the Interstate Paving Company and the assignee and not declared void as to general creditors, the trustee took the interest of said Interstate Paving Company and nothing more. See cases cited.

It follows that the order of the referee must be reversed, and that the assignee is entitled to an order that the trustee indorse and deliver the warrants to the assignee named, the petitioner here.